MICHAEL C. NORTON AND NANCY L. NORTON, PLAINTIFFS v. SMC BUILDING, INC.; LAKE BADIN ASSOCIATES, A VIRGINIA GENERAL PARTNERSHIP; COUNTY OF MONTGOMERY, NORTH CAROLINA; AND CHARLES SHUFFLER, DEFENDANTS

No. COA02-394

(Filed 18 March 2003)

**Immunity— sovereign—negligent building inspection— waiver—building code—liability insurance**

> The trial court did not err in a negligence action resulting from defendant county's alleged negligent building inspection of plaintiffs' residence by granting summary judgment as a matter of law in favor of defendant county based on sovereign immunity, because: (1) even though plaintiffs contend that N.C. Bldg. Code § 109.1 operates as a waiver of defendant's sovereign immunity, § 109.1 has no application to the present case when plaintiffs have not asserted a claim against the building inspector or any other county employee or official; (2) even though plaintiffs contend the county waived sovereign immunity under N.C.G.S. § 153A-435 through its purchase of liability insurance, the disputed exclusionary provision in the county's liability insurance encompasses the construction defects plaintiffs allege resulted from the county's negligent building inspection; and (3) plaintiffs cannot avoid the exclusionary provision by characterizing their alleged injury as something other than property damage, and even if it were not property damage, it would not have been a claim for which the county could have waived immunity through the purchase of insurance.

Appeal by plaintiffs from order entered 20 December 2001 by Judge Howard R. Greeson, Jr., in Montgomery County Superior Court. Heard in the Court of Appeals 22 January 2003.

*Moser, Schmidly, Mason & Roose, by Stephen S. Schmidly and Jason G. Goins, for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Burley B. Mitchell, Jr., and Mark A. Davis, for defendant-appellee Montgomery County.*

MARTIN, Judge.

Plaintiffs brought this action alleging claims for breach of contract, breach of warranty, and fraud against defendant SMC Building,

Inc. ("SMC"), and for negligence against defendants Lake Badin Associates, Charles Shuffler, and County of Montgomery ("County"). In their amended complaint, plaintiffs alleged they purchased property in the Old North State Club at Uwharrie Point in Montgomery County from defendant Lake Badin Associates for the purpose of building a retirement home, and upon the recommendation of Lake Badin Associates, plaintiffs entered into a contract with defendant SMC to construct a home on the property. According to the complaint, plaintiffs were not advised that SMC was not licensed as a general contractor or that SMC had a history of poor construction practices.

Plaintiffs alleged that on 9 December 1997, defendant County issued a building permit and subsequently performed inspections of the footings and foundation of plaintiffs' home. Although the footings and foundation failed inspection, plaintiffs alleged the County's building inspector, Phil Henley, did not document reasons for the failure or give plaintiffs notice thereof. Plaintiffs also alleged that in April or May 1998 the County negligently allowed framing work to begin without determining that the detected flaws had been repaired so as to meet the requirements of the State Building Code ("the Code").

In June 1998, defendant Charles Shuffler, an engineer, also made inspections and provided the County with a letter stating that the construction met the Code. Plaintiffs, who did not receive a copy, alleged that the letter was not appropriately sealed with Shuffler's professional seal and that the County violated its duty to plaintiffs by allowing construction to continue without either obtaining a properly sealed letter from Shuffler or conducting a re-inspection itself. In a later letter, Shuffler amended his report to indicate that some defects remained and required repair to meet the Code. Plaintiffs alleged the County failed to take steps to ensure that the necessary repair took place.

In October 1998, when the construction was 75 percent complete, plaintiffs noticed that no permits or inspection reports were posted on site. Despite assurances from SMC that all inspections and repairs had been performed, plaintiffs inquired with Henley about the inspection status on 6 November 1998. According to the complaint, Henley stated that he had accepted the reports from Shuffler as proof of compliance even though he had no evidence at that time that the repairs recommended by Shuffler had been completed. Plaintiffs then met with Shuffler on site on 11 November 1998 to determine whether the repairs had been made, but Shuffler allegedly made only an exterior

visual inspection. Plaintiffs alleged the County negligently accepted a letter from Shuffler stating the repairs had been completed even though it knew a visual inspection was not sufficient to determine compliance and that further inspections had not been made. Plaintiffs terminated SMC and hired a new builder to complete construction.

Plaintiffs alleged the County had "specific knowledge" that SMC had numerous problems and Code violations on other projects in the past but did not take reasonable action to determine that SMC constructed plaintiffs' home in compliance with the Code. Nevertheless, the County issued a certificate of occupancy on 18 March 1999. Upon occupying the residence, plaintiffs discovered other defects in construction. Although the County claimed to have performed a final inspection in connection with the certificate of occupancy, plaintiffs alleged that it conducted either no inspection or a negligent one. Plaintiffs also alleged defendant County had purchased liability insurance providing coverage for plaintiffs' claims.

Defendant County filed an answer in which it denied the material allegations of the complaint and asserted affirmative defenses, including sovereign immunity. Defendant County thereafter moved for summary judgment, based on sovereign immunity. Plaintiffs appeal from the order granting the motion for summary judgment and dismissing their claim against defendant County.

---

Plaintiffs assign error to the trial court's order granting summary judgment in favor of defendant Montgomery County. Plaintiffs assert (1) G.S. § 143-138 and Section 109.1 of Volume 7 of the State Building Code operate as a waiver of sovereign immunity in this case and (2) the County waived sovereign immunity through its purchase of liability insurance for the damages sustained by plaintiffs.

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2002). In deciding a motion for summary judgment, the trial court must view the evidence presented by the parties in the light most favorable to the non-movant. *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 565 S.E.2d 140 (2002).

The common law doctrine of sovereign immunity generally protects states and their political subdivisions, such as county govern-

ments, from suit for damages for tort liability based on performance of governmental functions. *Lovelace v. City of Shelby*, 351 N.C. 458, 526 S.E.2d 652, *reh'g denied*, 352 N.C. 157, 544 S.E.2d 225 (2000). However, under G.S. § 153-435(a), a county may waive the defense of sovereign immunity through the purchase of liability insurance. N.C. Gen. Stat. § 153A-435(a) (2002). In such cases, a county's liability is limited to those damages covered by the insurance purchased. N.C. Gen. Stat. § 153A-435(b) (2002). "Waiver of sovereign immunity may not be lightly inferred and State statutes waiving this immunity, being in derogation of the sovereign right to immunity, must be strictly construed." *Guthrie v. N.C. State Ports Authority*, 307 N.C. 522, 537-38, 299 S.E.2d 618, 627 (1983).

Plaintiffs first argue that, by adoption of the State Building Code and specifically § 109.1 of Volume 7, the General Assembly has waived the sovereign immunity of county governments with respect to suit for negligent building inspections. In support of this argument, plaintiffs point to G.S. § 153A-352, which describes as one of the duties of county inspection departments the task of enforcing state and local law relating to "the construction of buildings." N.C. Gen. Stat. § 153A-352(1) (2002). Further, plaintiffs note that G.S. § 143-138(e) applies the Code throughout the State of North Carolina. N.C. Gen. Stat. § 143-138(e) (2002). Plaintiffs assert specifically that § 109.1 of Volume 7 of the Code, as applied by these statutes, constitutes an implied waiver of sovereign immunity. Section 109.1 states in pertinent part:

> Relief from personal responsibility. The building official or the building official's authorized representative, acting in good faith and without malice in the discharge of his duties shall not render himself personally liable for any damage that may accrue to persons or property as a result of any act or by reason of any act or omission in the discharge of his duties. Any suit brought against the building official or employees because of such an act or omission performed in the enforcement of this code shall be defended by the jurisdiction until final determination and any judgment thereof shall be assumed by the jurisdiction.

N.C. Bldg. Code, Vol. VII, Residential § 109.1 (1997).

We note initially that Section 109.1 addresses the personal liability of building officials or their employees or representatives in suits *brought against the official or employees*. Plaintiffs have not asserted a claim against building inspector Henley or any other

County employee or official. Thus, § 109.1 appears to have no application to the present case. The provision does not expressly waive sovereign immunity and, in the absence of a clear indication of a contrary intent by the General Assembly, we decline to imply such a waiver. *Guthrie, supra.* Other than G.S. § 153A-435, plaintiffs have not directed us to, nor have we found, any statutory authority for waiver of a governmental unit's sovereign immunity against tort liability or of any intent by the General Assembly to delegate to the North Carolina Building Code Council the authority to waive it. Thus, we reject plaintiffs' argument that § 109.1 operates as a waiver of defendant County's sovereign immunity.

Plaintiffs also argue the trial court erred in granting summary judgment to the County because the County waived sovereign immunity through its purchase of liability insurance providing coverage for the claims asserted by plaintiffs. The parties agree that, at all times relevant to this case, the County was a participant in the North Carolina Counties Liability and Property Insurance Pool Fund. Subsection A of Section V of the County's Coverage Contract with the Fund contained the following provision:

> 2. <u>Public Officials Coverage</u>.
>
> The Fund will pay on behalf of the Participant or a Covered Person, or both, all sums which the Participant or Covered Person shall become legally obligated to pay as money damages because of any civil claim or claims brought against the Participant or a Covered Person arising out of any Wrongful Act of any Covered Person acting in his capacity as a Covered Person(s) of the Participant and caused by the Covered Person while acting in his regular course of duty.

Subsection G of the contract lists the following exclusion to the public officials coverage:

> This coverage does not apply to any claim as follows: . . .
>
> 5. for loss, damage to or destruction of any tangible property, or the loss of use thereof by reason of the foregoing; . . . .

The County asserts that this exclusion excludes coverage for plaintiffs' claim, therefore, the contract does not constitute a waiver of sovereign immunity. *Doe v. Jenkins*, 144 N.C. App. 131, 547 S.E.2d 124 (2001). Citing cases holding that claims for costs of repair to real

property due to negligent construction are not covered under an insured contractor's property damage coverage, plaintiffs argue that because their claims are for cost of repair and construction defects, they are not claims for "property damage" and do not fall under the exclusion. *See Hobson Construction Co., Inc. v. Great American Ins. Co.*, 71 N.C. App. 586, 322 S.E.2d 632 (1984), *disc. review denied*, 313 N.C. 329, 327 S.E.2d 890 (1985); *Reliance Ins. Co. v. Mogavero*, 640 F. Supp. 84 (D. Md. 1986).

The cases cited by plaintiffs are inapposite to the present case and we reject their arguments that claims for damages due to defective conditions in structures which occur due to negligence on the part of building inspectors are not claims for "loss, damage to, or destruction of . . . tangible property, or the loss of use thereof by reason of the foregoing."

> The meaning of language used in an insurance contract is a question of law for the Court, as is the "construction and application of the policy provisions to the undisputed facts." If the language in an exclusionary clause contained in a policy is ambiguous, the clause is "to be strictly construed in favor of coverage." If such an exclusion is plainly expressed, it is to be construed and enforced as expressed.

*Daniel v. City of Morganton*, 125 N.C. App. 47, 53, 479 S.E.2d 263, 267 (1997) (citations omitted). "Ambiguity in the terms of the policy is not established simply because the parties contend for differing meanings to be given to the language. Non-technical words are to be given their meaning in ordinary speech unless it is clear that the parties intended the words to have a specific technical meaning." *Allstate Ins. Co. v. Chatterton*, 135 N.C. App. 92, 95, 518 S.E.2d 814, 816-17 (1999) (citations omitted), *disc. review denied*, 351 N.C. 350, 542 S.E.2d 205 (2000).

The words used in the exclusionary provision at issue here are non-technical and there is no evidence or assertion that they were intended to have a special meaning. According to Webster's New Collegiate Dictionary, "damage" is "loss or harm resulting from injury to person, property, or reputation." *Webster's New Collegiate Dictionary*, 5th Ed. (1977). Likewise, the American Heritage Dictionary defines "damage" as "[h]arm or injury to property . . ., resulting in loss of value or the impairment of usefulness." *American Heritage Dictionary of the English Language*, 4th Ed. (2000). The

disputed exclusionary provision is not ambiguous and, when construed and enforced according to its plain meaning, it clearly encompasses the construction defects plaintiffs allege resulted from the County's negligent building inspection.

We also reject plaintiffs' attempt to avoid the exclusion by characterizing their alleged injury as something other than property damage on the basis of the nature of the damages which they seek to recover. Cost of repair is but one measure of potential damages for injury to real property, not a basis for defining the injury itself. *Plow v. Bug Man Exterminators, Inc.*, 57 N.C. App. 159, 290 S.E.2d 787, *disc. review denied*, 306 N.C. 558, 294 S.E.2d 224 (1982). Moreover, if plaintiffs' claim was not one for property damage of some kind, as they argue to avoid the exclusionary provision, it would not have been a claim for which the County could have waived immunity through the purchase of insurance. In pertinent part, G.S. § 153A-435 authorizes a county to waive sovereign immunity by insuring itself against "liability for . . . negligent . . . *damage to* person or *property*." N.C. Gen. Stat. § 153A-435(a) (2002) (emphasis added). The trial court correctly determined that defendant County was entitled to judgment as a matter of law.

Affirmed.

Judges HUDSON and STEELMAN concur.