PATRICK COWELL AND WIFE, TERRI COWELL, PLAINTIFFS v. GASTON COUNTY, FIRST
GASTON BANK OF NORTH CAROLINA, COUNTRYWIDE HOME LOANS,
INC., DEFENDANTS

No. COA07-1434

(Filed 3 June 2008)

## Immunity— governmental—building inspectors—waiver—liability insurance—ambiguous coverage exclusion

Defendant county waived governmental immunity by its purchase of liability insurance in an action by plaintiff homeowners to recover for damages allegedly caused by negligence of the county's building inspectors which allowed plaintiffs' general contractor to build a house unfit and unsafe for habitation where an ambiguous endorsement in the county's policy that excluded coverage for certain professional services, including inspection activities, was interpreted to apply only to the acts of professional engineers, architects or surveyors and not to building inspectors.

Appeal by defendant Gaston County from an order entered 9 August 2007 by Judge J. Gentry Caudill in Gaston County Superior Court. Heard in the Court of Appeals 30 April 2008.

*Gray, Layton, Kersh, Solomon, Sigmon, Furr & Smith, P.A., by William E. Moore, Jr. and Arcangela M. Mazzariello, for plaintiffs-appellees.*

*Harack, Talley, Pharr & Lowndes, P.A., by D. Christopher Osborn and Phillip E. Lewis, for Gaston County, defendant-appellant.*

JACKSON, Judge.

Plaintiffs initiated the instant suit on 9 August 2006, claiming that defendant, through the negligent actions of its building inspectors, caused damage to their property, specifically a house they were building. Plaintiffs contend that defendant was responsible for inspecting for code violations and safe construction of their house, and due to defendant's negligence, plaintiffs' general contractor was allowed to build a house unfit and unsafe for habitation. Plaintiffs made additional claims against defendant and other parties, which were dismissed upon motion pursuant to Rule 12(b)(6) by order filed

13 March 2007. Defendant moved for summary judgment in its favor on the remaining negligence claims on 24 May 2007, arguing that it held no insurance policies covering plaintiffs' claims, and it was therefore immune from suit due to the doctrine of governmental (or sovereign) immunity. Defendant's motion for summary judgment was denied by order filed 9 August 2007. From this order denying summary judgment, defendant appeals.

In defendant's sole assignment of error, it contends that the trial court erred in denying its motion for summary judgment because it was immune from liability for plaintiffs' claims based upon the doctrine of governmental immunity. We disagree.

Summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. On appeal, our standard of review is (1) whether there is a genuine issue of material fact and (2) whether the movant is entitled to judgment as a matter of law. The evidence presented is viewed in the light most favorable to the non-movant.

The court is not authorized by Rule 56 to decide an issue of fact. It is authorized to determine whether a genuine issue of fact exists. The purpose of summary judgment is to eliminate formal trials where only questions of law are involved by permitting penetration of an unfounded claim or defense in advance of trial and allowing summary disposition for either party when a fatal weakness in the claim or defense is exposed. Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity. When a county purchases liability insurance, however, it waives governmental immunity to the extent it is covered by that insurance.

*McCoy v. Coker*, 174 N.C. App. 311, 313, 620 S.E.2d 691, 693 (2005) (citations and quotations omitted).

In the instant case, the only issue on appeal is whether plaintiffs' complaint should have been dismissed because defendant was immune from suit based upon governmental immunity. The dispositive issue in this matter is whether defendant had waived its immunity through the purchase of liability insurance. Defendant purchased two

COWELL v. GASTON CTY.

[190 N.C. App. 743 (2008)]

insurance policies from the Zurich North America arm of Zurich Financial Services Group (Zurich). One policy was issued by Northern Insurance Company of New York (Northern policy), and another policy was issued by Maryland Casualty Insurance Company (Maryland policy). Both policies covered a term from 1 July 2001 to 1 July 2002. According to plaintiffs' complaint, construction of their house began in mid-June of 2001, and was "completed" around the end of 2001 or the beginning of 2002. Defendant was responsible for inspecting the work done in building plaintiffs' house during this time period. If either of the policies provided coverage against the alleged negligent acts of defendant's building inspector, then defendant has waived its governmental immunity and its motion for summary judgment was properly denied. It is defendant's burden to show that no genuine issue of material fact exists that the policies do not cover its actions in the instant case. *Marlowe v. Piner*, 119 N.C. App. 125, 127-28, 458 S.E.2d 220, 222 (1995).

We first address the Maryland policy, which is entitled "Public Officials Liability Coverage." This policy includes an "exclusions" section, which reads in relevant part:

This Policy does not apply to any "claim" made against an insured:

. . . .

3. for damage to or destruction of any property, including diminution of value or loss of use.

. . . .

16. Based upon or arising out of the performance or failure to perform any professional, supervisory, inspection or engineering services including architects, engineers, surveyors, healthcare providers, accountants, lawyers or any other professional service by an insured or by anyone else for whom the insured may be responsible.

Based upon the clear language of this policy, plaintiffs' claims were excluded from coverage for defendant's actions as a building inspector. Even assuming *arguendo* that building inspection does not constitute a "professional service", as argued by defendant's Assistant County Manager, William Beasley (Beasley), exclusion 3 clearly exempts from liability coverage the type of harm plaintiffs claim. The Maryland policy did not cover plaintiffs' claims, and summary judgment in favor of defendant would have been proper as to this policy.

The Northern policy requires a more intricate analysis, and our use of the rules of contract interpretation.

> It is well established that contracts for insurance are to be interpreted under the same rules of law as are applicable to other written contracts. One of the most fundamental principles of contract interpretation is that ambiguities are to be construed against the party who prepared the writing. Therefore, in an insurance contract all ambiguous terms and provisions are construed against the insurer.

*Chavis v. Southern Life Ins. Co.*, 318 N.C. 259, 262, 347 S.E.2d 425, 427 (1986) (internal citations omitted). "[A] contract of insurance should be given that construction which a reasonable person in the position of the insured would have understood it to mean and, if the language used in the policy is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured, since the company prepared the policy and chose the language." *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978) (citation omitted).

> When an insurance company, in drafting its policy of insurance, uses a "slippery" word to mark out and designate those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term. All who may, by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection. If, in the application of this principle of construction, the limits of coverage slide across the slippery area and the company falls into a coverage somewhat more extensive than it contemplated, the fault lies in its own selection of the words by which it chose to be bound.

*Id.*

> [T]he intention of the parties as gathered from the language used in the policy is the polar star that must guide the courts in the interpretation of such instruments. "The heart of a contract is the intention of the parties which is to be ascertained from the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time." Therefore, in the interpretation of language contained in an insurance policy, the court may take into consideration the character of the business of the insured and the usual hazards involved therein in ascertaining the intent of the parties.

*McDowell Motor Co. v. New York Underwriters Ins. Co.*, 233 N.C. 251, 253-54, 63 S.E.2d 538, 540-41 (1951) (internal citations omitted).

The relevant portion of the Northern policy is the section entitled "Commercial General Liability Coverage." In its brief, defendant argues that the Northern policy does not cover the work of its building inspectors, and thus plaintiffs' suit must fail because governmental immunity applies. Defendant argues that a particular provision in that policy specifically exempts the work of its building inspectors from liability coverage. Defendant bases the entire argument in its brief on one provision in the Commercial General Liability Coverage section of the Northern Policy. Specifically, an endorsement which reads as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

EXCLUSION—ENGINEERS, ARCHITECTS OR SURVEYORS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2, Exclusions of COVERAGE A—BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I—Coverages) and paragraph 2, Exclusions of COVERAGE B—PERSONAL AND ADVERTISING INJURY LIABILITY (Section I—Coverages):

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity.

Professional services include:

1. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

2. Supervisory, inspection, architectural or engineering activities.

Defendant argues that because the term "inspection" is included in the professional services portion of this exclusionary endorse-

ment, its inspectors were excluded from liability coverage under the Northern policy. Defendant further argues that the word "you" in the phrase "professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity" broadens the scope of this exclusionary provision beyond the professional services rendered by engineers, architects or surveyors expressly denoted in the exception. We note that because defendant bases its entire argument on its assertion that the above endorsement explicitly excluded its building inspectors from liability coverage, and does not argue that any other portion of the Northern policy might also exclude coverage for its inspectors, we limit our review of the policy to this issue. N.C. R. App. P., Rule 28(b)(6).

Initially, we note that the endorsement is captioned "Exclusion—Engineers, Architects or Surveyors Professional Liability". By its very specific and limiting language, this caption alerts the insured that the following language pertains to the acts of three named professions. In the body of the endorsement, Zurich states that it will not cover liability for certain damages, including personal injury and property damage, "arising out of the rendering of or failure to render any professional services by you or any engineer, architect or surveyor who is either employed by you or performing work on your behalf in such capacity." Even viewing this language in the light most *favorable* to defendant's argument (which is contrary to our legal duty on appeal), this language is ambiguous. Defendant argues that the language "arising out of the rendering of or failure to render *any professional services by you* or . . ." (Emphasis added), provides a blanket exclusion in the Northern Policy for any professional service conducted by Gaston County itself, at least for the named "professional services" in the endorsement, which include "inspection". However, both the caption of the endorsement, and its effective language could be interpreted by a reasonable insured to mean the exclusion applied only to professional engineers, architects or surveyors, whether permanent employees of Gaston County, or otherwise retained by Gaston County. We note that all of the listed "professional services", including "inspection", are services performed by engineers, architects and surveyors.

Defendant's interpretation of the endorsement would leave Zurich with broad discretion in deciding what professional services could be denied coverage, and leave the insured unable to discern the limits of its coverage. Using this interpretation, it is unclear how the

contracting parties could have had any meaningful meeting of the minds as to what services were and were not excluded. *See Creech v. Melnik,* 347 N.C. 520, 527, 495 S.E.2d 907, 911-12 (1998). We hold that the word "you" in this context constitutes a "slippery" word as contemplated in *Grant,* must be construed against Zurich, and thus allow coverage for defendant's building inspectors' acts. *Grant,* 295 N.C. at 43, 243 S.E.2d at 897.

Further, Zurich has demonstrated that it is capable of drafting exclusionary provisions, without ambiguity, broadly limiting liability coverage for professional work done by or on behalf of defendant. In the Maryland policy, Section I(B.)(16.) states that the policy does not cover any claim: "Based upon or arising out of the performance or failure to perform any professional, supervisory, inspection or engineering services including architects, engineers, surveyors, healthcare providers, accountants, lawyers or any other professional service by an insured or by anyone else for whom the insured may be responsible." This provision unambiguously excludes all forms of professional services from liability coverage under the Maryland policy.

Beasley, an Assistant County Manager for Gaston County, was made available by defendant for deposition on 14 January 2005. In his deposition, Beasley, representing defendant, agreed that the contested endorsement should *not* apply to building inspectors working for defendant, further stating that he did not consider building inspection to be a "professional service". Beasley's deposition testimony provides some insight into "the construction which a reasonable person in the position of the insured would have understood [the provision] to mean". *Grant,* 295 N.C. at 43, 243 S.E.2d at 897. "[I]f the language used in the policy is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured, since the company prepared the policy and chose the language." *Id.* Having offered Beasley as not only a reasonable person, but one of its employees most qualified to interpret the contested insurance policies, defendant may not now argue the opposite. This testimony raises at least a question of material fact concerning defendant's reasonable understanding of the coverage it was purchasing. *Id.* Beasley's testimony further provides some evidence as to defendant's intent and understanding of the coverage it was purchasing. *McDowell,* 233 N.C. at 253-54, 63 S.E.2d at 540-41. In light of the multiple ambiguities in the Northern policy endorsement, and based upon established rules of contract interpretation, these ambiguities

must be construed against Zurich (and therefore against defendant's arguments), and in favor of liability coverage. *Grant*, 295 N.C. at 43, 243 S.E.2d at 897. We hold that the contested endorsement is "reasonably susceptible of different constructions," and defendant's motion for summary judgment based upon the defense of governmental immunity was properly denied as to the Northern policy. *Id.* We note that at trial, plaintiffs' suit may only proceed based upon the coverage provided pursuant to the Northern policy.

Affirmed.

Judges McGEE and ELMORE concur.