DENNIS E. BULLARD, M.D. AND WENDY W. BULLARD, PLAINTIFFS v. WAKE COUNTY, A BODY POLITIC AND CORPORATE, TROY HOWARD PARROTT, IN HIS OFFICIAL CAPACITY AS A WAKE COUNTY BUILDING INSPECTOR, JOHN DIPETRIO, IN HIS OFFICIAL CAPACITY AS A WAKE COUNTY BUILDING INSPECTOR, STEVEN ADEN BRANCH, IN HIS OFFICIAL CAPACITY AS A WAKE COUNTY BUILDING INSPECTOR, AND EDWARD LANGSTON SAVAGE, IN HIS OFFICIAL CAPACITY AS A WAKE COUNTY BUILDING INSPECTOR, DEFENDANTS

No. COA11-1022

(Filed 17 July 2012)

**Immunity—sovereign immunity—sufficiently pled—no insurance—no waiver—summary judgment proper**

The trial court did not err in a case involving allegations of negligent inspection and negligent misrepresentation in connection with defendant county's inspection of plaintiffs' house by granting summary judgment in favor of defendants on the grounds of sovereign immunity. The county sufficiently pled the affirmative defense and as the county did not, during the pertinent time frame, have insurance that would cover the claims in this case, there was no waiver of sovereign immunity under N.C.G.S. § 153A-435. Because there was no waiver, the Court of Appeals did not address the parties' contentions regarding the statute of limitations.

**BULLARD v. WAKE CNTY.**

[221 N.C. App. 522 (2012)]

Appeal by plaintiffs from order entered 24 August 2010 by Judge Paul G. Gessner in Wake County Superior Court. Heard in the Court of Appeals 11 January 2012.

*Troutman Sanders, LLP, by Gary S. Parsons and D. Kyle Deak, for plaintiffs-appellants.*

*Office of the Wake County Attorney, by Wake County Attorney Scott W. Warren and Deputy County Attorney Roger A. Askew, for defendants-appellees.*

GEER, Judge.

Plaintiffs Dennis E. Bullard, M.D. and Wendy W. Bullard ("the Bullards") appeal from the trial court's grant of summary judgment in favor of defendants Wake County, Troy Howard Parrott, John Dipetrio, Steven Aden Branch, and Edward Langston Savage ("the County")[1] on the grounds of sovereign immunity and the statute of limitations. We hold that because the County did not, during the pertinent time frame, have insurance that would cover the claims in this case, there was no waiver of sovereign immunity under N.C. Gen. Stat. § 153A-435 (2011). The trial court, therefore, properly granted the motion for summary judgment.

Facts

In 1991, the Bullards bought 5.28 acres of land in North Raleigh on which to build a home. The Bullards contracted with Tall House Building Company to serve as the general contractor for the construction of a French Chateau-style single family residence. Structural drawings for the project were approved by the Wake County Inspections Department on 6 November 2002.

Construction of the house started in April 2003 and continued until the issuance of the certificate of occupancy on 15 December 2004. During construction, the County performed inspections of the foundation, footings, foundation slab, framing, plumbing systems, electrical systems, and insulation. At the final inspection, the County approved energy, life safety, and structural elements. The certificate

---

1. The individual defendants were sued solely in their official capacities. Suits against individuals in their official capacities are merely suits against the governmental entity, which, in this case, is the County. *Mullis v. Sechrest,* 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998) ("As we have previously noted, official-capacity suits are merely another way of pleading an action against the governmental entity."). We, therefore, refer to defendants collectively as "the County."

of occupancy issued for the house asserted that "all required building code inspections [had] been completed" and that "code violations discovered during such inspections [had] been duly noted, ordered corrected and [had] been re-inspected."

At some point after the certificate of occupancy was issued, although the precise date is disputed, plaintiffs began to discover problems with the construction that they have described as "major construction deficiencies." Plaintiffs arbitrated their claims against Tall House, and an arbitration panel issued an award in plaintiffs' favor on 4 August 2006.

During the course of the repairs ordered by the arbitration panel, the Bullards learned that the house also had significant floor framing issues. The Bullards had not discovered those issues earlier because the defective work was covered by floor sheathing. Since then, the Bullards have continued to uncover structural deficiencies in the house that collectively are so severe that the house has been deemed not fit for human habitation.

The Bullards returned to arbitration with Tall House. The second arbitration panel issued an order on 9 April 2009 requiring Tall House to pay $2,626,452.45 for repair and damages associated with the faulty construction of the Bullards' house, as well as fees and costs. Following that award, Tall House declared bankruptcy.

On 7 April 2009, the Bullards filed suit against the County, asserting claims for negligent inspection and negligent misrepresentation in connection with the County's inspection of the Bullards' house. The County filed an answer including, among other affirmative defenses, the statute of limitations and sovereign immunity.

On 30 April 2010, the County filed a motion for summary judgment. On 24 August 2010, the trial court entered an order granting the motion on the grounds that "there are no genuine issues of material fact as to the issue of sovereign immunity [and] the Court concludes that the [sic] all of the plaintiff's claims raised herein are barred by sovereign immunity . . . ." The court further concluded that summary judgment should also be granted based on the statute of limitations. The Bullards timely appealed to this Court.

Discussion

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that any party is entitled to a judgment as a matter of law." N.C.R. Civ. P. 56(c). This Court reviews the trial court's grant of summary judgment de novo. *Nationwide Mut. Fire Ins. Co. v. Mnatsakanov*, 191 N.C. App. 802, 805, 664 S.E.2d 13, 15 (2008).

Our Supreme Court has explained the burdens applicable to a motion for summary judgment:

> The party moving for summary judgment bears the burden of establishing that there is no triable issue of material fact. This burden may be met by proving that an essential element of the opposing party's claim is non-existent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim.

*DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002) (internal citations and quotation marks omitted).

Once the moving party meets its burden, "then the nonmovant must produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Roumillat v. Simplistic Enters., Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) (internal quotation marks omitted), *overruled in part on other grounds by Nelson v. Freeland*, 349 N.C. 615, 507 S.E.2d 882 (1998). In order to meet this burden, the nonmoving party " 'may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial.' " *Id.* (quoting N.C.R. Civ. P. 56(e)).

We consider first whether the trial court erred in granting summary judgment based upon sovereign immunity. Under North Carolina law, counties are entitled to sovereign immunity unless the county waives immunity or otherwise consents to be sued. *Dawes v. Nash Cnty.*, 357 N.C. 442, 445, 584 S.E.2d 760, 762 (2003). *See also Meyer v. Walls*, 347 N.C. 97, 104, 489 S.E.2d 880, 884 (1997) ("Under the doctrine of governmental immunity, a county is immune from suit for the negligence of its employees in the exercise of governmental functions absent waiver of immunity.").

The General Assembly has provided that a county may waive immunity through the purchase of insurance:

> A county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negli-

gent or intentional damage to person or property or against absolute liability for damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment. The board of commissioners shall determine what liabilities and what officers, agents, and employees shall be covered by any insurance purchased pursuant to this subsection.

*Purchase of insurance pursuant to this subsection waives the county's governmental immunity, to the extent of insurance coverage, for any act or omission occurring in the exercise of a governmental function.*

N.C. Gen. Stat. § 153A-435(a) (emphasis added).

The Bullards, however, first argue that the County failed to properly plead the affirmative defense of sovereign immunity because the answer did not set out the specific policy language on which the County was relying. The County's Fourth Affirmative Defense alleged:

For and as a Fourth defense, the answering defendants move the court to dismiss the plaintiffs' complaint as said complaint alleges negligent acts, actions or omissions arising out of governmental functions and/or duties of these answering defendants and all claims are barred by the doctrine of governmental or sovereign immunity. It is also specifically alleged that these defendants have not waived any immunity defense by the purchase of liability insurance coverage or otherwise as by law allowed. The foregoing Affirmative defense of sovereign immunity or governmental immunity is hereby pleaded as a complete bar to this action.

(Emphasis omitted.)

In *Patrick v. Wake Cnty. Dep't of Human Servs.*, 188 N.C. App. 592, 593, 655 S.E.2d 920, 922 (2008), the defendant asserted as an affirmative defense that " '[a]ll claims of Plaintiff against all Defendants are barred by sovereign immunity as there has been no waiver of immunity by the purchase of insurance.' " This Court, in affirming the trial court's order granting summary judgment based on sovereign immunity held that "[d]efendants did not waive sovereign immunity through the purchase of this policy *and properly asserted this affirmative defense in their answer.*" *Id.* at 597, 655 S.E.2d at 924 (emphasis added). Since there is no meaningful distinction

between the articulation of the affirmative defense in *Patrick* and the affirmative defense in this case, we hold that the County sufficiently pled the affirmative defense of sovereign immunity.

Turning to the merits of that affirmative defense, it is well established that the mere purchase of insurance standing alone does not waive a county's sovereign immunity. "[I]f the action brought against [the county] is excluded from coverage under [its] insurance policy," then there is no waiver of immunity. *Id.* at 596, 655 S.E.2d at 923. *See also Norton v. SMG Bldg., Inc.*, 156 N.C. App. 564, 569-70, 577 S.E.2d 310, 314-15 (2003) (holding that purchase of liability insurance did not waive sovereign immunity because policy excluded coverage for plaintiff's claim); *Doe v. Jenkins*, 144 N.C. App. 131, 135, 547 S.E.2d 124, 127 (2001) ("[B]ecause the insurance policy does not indemnify defendant against the negligent acts alleged in plaintiff's complaint, defendant has not waived its sovereign immunity . . . .").

The County, in this instance, did have insurance coverage continuously from 13 January 2003 (when the building permit for the Bullards' house was issued) through 15 December 2004 (when the certificate of occupancy was issued). For the period 1 June 2002 to 1 June 2003 and the period 1 June 2003 to 1 June 2004, the relevant policies contained the following endorsement:

## GOVERNMENTAL IMMUNITY ENDORSEMENT

This Policy is not intended by the insured to waive its governmental immunity as allowed by North Carolina General Statutes Sec. 153A-435. Accordingly, subject to this policy and the Limits of Liability shown on the Declarations, this policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defense is asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

This Court addressed the impact of this specific endorsement on sovereign immunity in *Patrick*. In that case, the plaintiff sued Wake County Department of Human Services for negligence and negligent infliction of emotional distress. 188 N.C. App. at 592-93, 655 S.E.2d at 921-22. This Court held that the above endorsement "exclude[d] coverage for plaintiff's action for negligence and negligent infliction of emotional distress. Defendants did not waive sovereign immunity through the purchase of this policy and properly asserted this affirmative defense in their answer. The defense of sovereign immunity

clearly applies to bar plaintiff's claims." *Id.* at 597, 655 S.E.2d at 924. Accordingly, the Court held that "[t]he trial court properly granted defendants' motion for summary judgment." *Id.*

This Court applied *Patrick* to similar policy language in *Estate of Earley v. Haywood Cnty. Dep't. of Soc. Servs.*, 204 N.C. App. 338, 694 S.E.2d 405 (2010), in which the plaintiff had asserted a negligence claim. In *Earley*, Haywood County's insurance policy included an exclusion for " '[a]ny claim, demand, or cause of action against any Covered Person as to which the Covered Person is entitled to sovereign immunity or governmental immunity under North Carolina Law.' " *Id.* at 342, 694 S.E.2d at 408. Relying on *Patrick*, the Court held that because of this exclusion, the County had not waived sovereign immunity as to the plaintiff's claim. *Id.* at 343, 694 S.E.2d at 409.

The Court observed, however:

> We acknowledge the arguably circular nature of the logic employed in *Patrick*. The facts are that the legislature explicitly provided that governmental immunity is waived to the extent of insurance coverage, but the subject insurance contract eliminates any potential waiver by excluding from coverage claims that would be barred by sovereign immunity. Thus, the logic in *Patrick* boils down to: Defendant retains immunity because the policy doesn't cover his actions and the policy doesn't cover his actions because he explicitly retains immunity. Nonetheless in this case, as in *Patrick*, where the language of both the applicable statute and the exclusion clause in the insurance contract are clear, we must decline Plaintiff's invitation to implement "policy" in this matter. Any such policy implementation is best left to the wisdom of our legislature.

*Id.*, 694 S.E.2d at 409-10.

We are bound by both *Patrick* and *Earley* and, consequently, must hold that the County, in this case, did not waive its sovereign immunity as to the Bullards' claims during the periods of 1 June 2002 to 1 June 2003 and 1 June 2003 to 1 June 2004. Plaintiffs contend, however, that because the certificate of occupancy was issued on 15 December 2004, sovereign immunity should be determined based on the policy in effect from 1 June 2004 to 1 June 2005. During that period, the County's insurance policy did not include the endorsement quoted above. The County argues, however, that this policy still does not provide coverage for the Bullards' claim.

The 1 June 2004 to 1 June 2005 policy specified that the duty of the insurance company

> to pay any sums that [the County] become[s] legally obligated to pay arises *only after there has been a complete expenditure of [the County's] retained limit by means of payments for judgments, settlements, or defense costs.* [The County's] retained limit shall not be exhausted by [its] office expenses, employees' salaries, or expenses of any claims servicing organization that [the County has] engaged. [The insurance company] will then be liable only for that portion of damages in excess of [the County's] retained limit up to [the policy's] Limits of Insurance.

(Emphasis added.) "Retained Limit" under the policy "refers to the amount stated in the Declarations. This amount may consist of a self-insured retention, underlying insurance, or a combination thereof." (Emphasis omitted.) Although the Bullards assert that the retained limit under this policy includes defense costs, they have overlooked an endorsement to the policy that provided, instead, that the retained limit, "with respect to a self-insured retention, shall not include defense costs . . . ."

The County had a retained limit of $500,000.00 for "[a]ny one occurrence or wrongful act." The County chose to cover its retained limit through self-insurance as allowed by N.C. Gen. Stat. § 153A-435(a). That statute provides in relevant part that:

> [i]f a county uses a funded reserve instead of purchasing insurance against liability for wrongful death, negligence, or intentional damage to personal property, or absolute liability for damage to person or property caused by an act or omission of the county or any of its officers, agents, or employees acting within the scope of their authority and the course of their employment, the county board of commissioners may adopt a resolution that deems the creation of a funded reserve to be the same as the purchase of insurance under this section. *Adoption of such a resolution waives the county's governmental immunity only to the extent specified in the board's resolution,* but in no event greater than funds available in the funded reserve for the payment of claims.

*Id.* (emphasis added).

On 6 October 2003, the Wake County Board of Commissioners adopted a Resolution pursuant to N.C. Gen. Stat. § 153A-435(a)

regarding its self-insured retention and providing, in the Resolution's preamble, that the Board "desire[d] to waive the County's governmental immunity to the limited extent provided in this resolution." The text of the Resolution itself reiterated that "[t]his resolution is intended only to waive the County's immunity in the limited circumstances described herein." After various restrictions on waiver not pertinent here, the Resolution stated: "Waiver of immunity pursuant to this Resolution *is limited to the voluntary settlement of claims.* Settlements are not available under this Resolution after the institution by Claimant of any legal proceeding regarding the claim against the County, its officials, employees, or agents." (Emphasis added.)

The County thus limited its waiver of immunity with respect to the $500,000.00 retained limit to those instances involving the "voluntary settlement of claims" prior to the filing of any legal proceedings. The Bullards' claims were not voluntarily settled prior to the filing of this action and, therefore, the claims do not fall within the scope of the waiver of sovereign immunity set out in the Resolution with respect to the $500,000.00 retained limit. *See Cunningham v. Riley,* 169 N.C. App. 600, 603, 611 S.E.2d 423, 424-25 (2005) (holding that to the extent plaintiff's total loss fell within County's self-insured retention, plaintiff's claims were barred by sovereign immunity).

The question remains whether the County's purchase of insurance waived sovereign immunity for the portion of the Bullards' claim exceeding the $500,000.00 retained limit. That issue is resolved by this Court's decisions in *Arrington v. Martinez,* 215 N.C. App. 252, 716 S.E.2d 410 (2011), and *Magana v. Charlotte-Mecklenburg Bd. of Educ.,* 183 N.C. App. 146, 645 S.E.2d 91 (2007).

In *Magana,* this Court considered whether a school board had waived its sovereign immunity by the purchase of insurance pursuant to N.C. Gen. Stat. § 115C-42 (2005), a statute equivalent to N.C. Gen. Stat. § 153A-435 but applicable to school boards. The school board's insurance policy provided "coverage for damages in excess of the Board's self-insured retention of $1,000,000." *Magana,* 183 N.C. App. at 147, 645 S.E.2d at 92. With respect to damages in excess of $1,000,000.00, the policy provided that "when 'the insured's legal obligation to pay damages to which this insurance applies has been determined, and: (1) the amount of such damages is greater than . . . [$1,000,000], and (2) the insured has paid . . . [$1,000,000] to the claimant, then and only then will the insured be entitled to make claim for indemnity under this Policy.' " *Id.* at 148, 645 S.E.2d at 92.

**BULLARD v. WAKE CNTY.**

[221 N.C. App. 522 (2012)]

This Court first concluded that these clauses had the effect of making the "insurance policy's coverage . . . contingent upon the Board's liability for the first $1,000,000 of any damage award." *Id.* Because the school board had not purchased insurance for any amount below the $1,000,000.00 coverage limit, it had not waived its sovereign immunity for any damages under $1,000,000.00. The Court then concluded that even though the plaintiffs sought damages in excess of $1,000,000.00, since the board had immunity for claims seeking damages under $1,000,000.00, "it cannot be required to pay any part of the $1,000,000 self-insured amount and, therefore, the excess policy will provide no indemnification." *Id.* at 149, 645 S.E.2d at 93.

Although the Bullards attempt to distinguish *Magana* by arguing that the *Magana* policy language differs from the language in the Wake County policy, this Court, in *Arrington*, applied the same reasoning as in *Magana* to a City of Raleigh policy with language identical to that in the Wake County policy. The City of Raleigh policy provided, just like the policy in this case:

Our duty to pay any sums that **you** become legally obligated to pay arises only after there has been a complete expenditure of **your retained limit** by means of payments for judgments, settlements, or defense costs. **Your retained limit** shall not be exhausted by **your** office expenses, **employees'** salaries, or expenses of any claims servicing organization that you have engaged. **We** will then be liable only for that portion of damages in excess of **your retained limit** up to your Limits of Insurance.

*Arrington*, 215 N.C. App. at 265, 716 S.E.2d at 418.

This Court interpreted this provision as requiring an " 'expenditure' of the City's $2,000,000.00 retained limit 'by means of payments for judgments, settlements, or defense costs before providing indemnification.' " *Id.*[2] The Court concluded that the plaintiff could not just "skip over" the amount that was "self-insured by the City by the [self-funded reserve], and recover only upon the policies which provide excess coverage for damages in excess of" the self-funded reserve. *Id.* at 264, 716 S.E.2d at 418. Accordingly, the Court concluded that because of the lack of exhaustion of the retained limit under the City's policies, there was "no genuine issue of material fact as to plaintiff's failure to trigger the City's

2. The County's policy differs from the City's policy in that the County's policy does not include defense costs within the retained limit.

waiver of immunity." *Id.* at 265, 716 S.E.2d at 419. The Court, there-fore, reversed the trial court's denial of summary judgment and remanded for entry of judgment in favor of the City. *Id.* at 267, 716 S.E.2d at 420.

Here, as this Court held in *Magana* and *Arrington*, because the County is entitled to sovereign immunity as to the Bullards' negli-gence claims for the first $500,000.00 of their damages and because defense costs are excluded from the amount included within the retained limit, there will be no "complete expenditure" of the retained limit through payments for judgments. While the County's Resolution regarding the self-insured retention provides for waiver of the immu-nity in the event of voluntary settlements, it specifies that "[s]ettle-ments are not available under this Resolution after the institution by Claimant of any legal proceeding regarding the claim against the County, its officials, employees, or agents." Accordingly, there can be no qualifying settlements in this case. There will, therefore, be no expendi-ture of the retained limit. As a result, *Magana* and *Arrington* require that we conclude that the County has not, pursuant to N.C. Gen. Stat. § 153A-435, waived sovereign immunity as to the Bullards' claims.

The Bullards argue vigorously that such a construction of the policy would fall within the reasoning of *Fulford v. Jenkins*, 195 N.C. App. 402, 409, 672 S.E.2d 759, 763 (2009) (internal citations and quo-tation marks omitted):

> Were we to adopt Defendants' interpretation of the policy, we would have to assume that Duplin County intended to purchase an insurance policy that provided it almost no coverage. Because Duplin County is a governmental entity and political subdivision of the State, if the policy exempts Duplin County from coverage for all of its governmental functions, it is uncertain what acts by Duplin County *would* be covered by the policy. The vast majority of actions for which Duplin County could face liability are those performed in its official capacity as a political subdivision of this State. It is thus unclear how the contracting parties could have had any meaningful meeting of the minds as to what services were and were not excluded if the policy as written was not intended to cover the official acts of Duplin County.

This precise argument in relation to self-insured retentions was, however, addressed in *Magana*: "The plaintiffs have argued that such a reading of the policy renders it meaningless, offering no coverage for any eventuality. We cannot agree. There are several instances

where immunity is not available either because of federal or state statutes, or because of exceptions to the sovereign immunity doctrine. *See, e.g., Smith [v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 424 (1976)] (abolishing state sovereign immunity in the contractual context)." *Magana*, 183 N.C. App. at 149, 645 S.E.2d at 93. Because, like here, none of those instances applied, the Court affirmed the grant of summary judgment. *Id.*

The Bullards further contend that the County is bound by a response to a request for admissions and by the deposition testimony of the County's Rule 30(b)(6) designee. The admission stated:

8. The policy attached hereto as *Exhibit 2* provides coverage for the County and the Inspectors for the claims set forth in the Complaint, subject to a $500,000.00 self insured retention limit.

RESPONSE:

Admitted upon information and belief to the extent that this request addresses whether one or both the causes of action, if proven, would be covered by said policy subject to the retention referred to above. Defendants have made reasonable inquiry into the matters addressed by this Request and at this time this request is admitted based upon that inquiry. Defendants reserve the right to supplement or amend this response as information becomes available and to the extent that the issue of coverage is or may be determined by the court or pursuant to N.C.G.S. § 153A-435(b).

The Rule 30(b)(6) designee testified as follows:

Q   All right. You'll see the allegation says that Wake County has waived Defendants' governmental immunity by contracting to insure itself, its officers, agents or employees against liability for those claims. You see that?

A   Yes.

Q   And you will see in looking at Paragraph 10 of the Answer that that has been denied.

A   Yes.

Q   Tell me what facts support that denial, please.

A   Our waiver of immunity? Because we are not fully insured. We are only insured for a portion above $500,000.

Q  So you're immune from $500,000 down, but you're insured above $500,000; is that right?

A  We are insured for over $500,000.

Q  So the basis for that denial is that there is a $500,000 gap in coverage, correct?

A  Yes.

Q  Okay. Any other basis?

A  Not that I'm aware of.

Q  All right. Again, you are the County for purposes of responding to this, correct?

A  I understand.

The Bullards argue that the County has, therefore, admitted a waiver of immunity for amounts greater than $500,000.00. In support of their position, they cite *Cowell v. Gaston Cnty.*, 190 N.C. App. 743, 748, 660 S.E.2d 915, 919 (2008), in which the parties disputed whether the insurance policy provided coverage for building inspections given an endorsement excluding coverage for losses arising out of the rendering of professional services. In concluding that building inspections did not fall within the exclusion for professional services, the Court relied upon the testimony of Gaston County's Rule 30(b)(6) designee that he did not consider building inspection to be a professional service. *Id.* at 749-50, 660 S.E.2d at 920.

*Cowell*, however, hinged on the Court's conclusion that the policy was ambiguous—it was reasonably susceptible of different constructions. *Id.* at 749, 660 S.E.2d at 920. Here, however, the policies are unambiguous. It is settled, at least with respect to unambiguous policies, that " '[t]he interpretation of language used in an insurance policy is a question of law, governed by well-established rules of construction.' " *Magnolia Mfg. of N.C., Inc. v. Erie Ins. Exch.*, 179 N.C. App. 267, 278, 633 S.E.2d 841, 847 (2006) (Tyson, J., dissenting) (quoting *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 138 N.C. App. 530, 532, 530 S.E.2d 93, 95 (2000)), *rev'd per curiam for reasons in dissenting opinion*, 361 N.C. 213, 639 S.E.2d 443 (2007).

The question whether the terms of the County's policy waived the County's sovereign immunity as to the Bullards' claims is thus a question of law. Rule 36(a) of the Rules of Civil Procedure only allows requests for admission of the truth of any matters "that relate to state-

ments or opinions of fact or of the application of law to fact." Similarly, parties are not bound by testimony as to questions of law given by their Rule 30(b)(6) witnesses. *See AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009) (holding with respect to Rule 30(b)(6) testimony regarding meaning of term in insurance policy that "[t]his type of legal conclusion is not binding on [the carrier]"); *R & B Appliance Parts, Inc. v. Amana Co.*, 258 F.3d 783, 787 (8th Cir. 2001) (holding that while party was bound by Rule 30(b)(6) testimony regarding facts, it was not bound by legal conclusion that agreement had been terminated).

In short, under the terms of the insurance policy in this case and this Court's prior holdings in *Arrington* and *Magana*, we are bound to conclude that the trial court properly granted the County summary judgment. Because we have concluded that the County did not waive its sovereign immunity as to the Bullards' claims, we need not address the parties' contentions regarding the statute of limitations.

Affirmed.

Judges STEELMAN and ROBERT N. HUNTER, JR. concur.