Duke Energy Carolinas, LLC v. AG Ins. SA/NV, 2021 NCBC 46.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
17 CVS 5594

DUKE ENERGY CAROLINAS, LLC
and DUKE ENERGY PROGRESS,
LLC,

              Plaintiffs,

v.

AG INSURANCE SA/NV (f/k/a
L'Etoile S.A. Belge d'Assurances); et
al.,

              Defendants.

**ORDER AND OPINION ON
DEFENDANTS ARROWOOD'S AND
CONTINENTAL'S MOTIONS FOR
SUMMARY JUDGMENT ON THE
POLLUTION EXCLUSION**[1]

1. **THIS MATTER** is before the Court on:

(i)     Defendant Arrowood Indemnity Company's ("Arrowood") Motion for

Summary Judgment on the Pollution Exclusion (the "Arrowood Motion"),

(ECF No. 955); and

(ii)    Defendant The Continental Insurance Company for London Guarantee and

Accident Company of New York's ("Continental") Motion for Summary

---

[1] On 4 December 2020 and 15 March 2021, the parties in this action filed a total of twenty-five motions for summary judgment and twenty-five motions *in limine* seeking to exclude expert testimony or otherwise substantially limit the presentation of evidence at trial. These motions were heard over six days in February and May 2021. At the conclusion of these hearings, the Court advised the parties that it intended to issue written opinions or intended rulings on these motions no later than 1 July 2021. On 29 June 2021, the parties and the mediator in this action advised the Court that settlement of some or all claims appeared possible and requested that the Court delay issuance of its order resolving the motions *in limine* as well as the twelve opinions and one intended ruling the Court was prepared to issue to resolve the pending summary judgment motions by its July 1 deadline. The Court agreed to delay its rulings, first to July 19, and then, upon evidence of substantial settlement progress, to July 28 and subsequently to August 4. The Court issues this Order and Opinion in the context of these ongoing settlement discussions at the request of the mediator, Duke, Arrowood, and Continental.

Judgment on the Basis of the Pollution Exclusion (the "Continental Motion"), (ECF No. 926) (collectively, the "Motions").

2. This action focuses on whether Defendants—all insurers who issued excess liability insurance policies to Plaintiffs Duke Energy Carolinas, LLC ("DEC") (formerly Duke Power Company ("Duke Power")) and Duke Energy Progress, LLC ("DEP") (formerly Carolina Power & Light Company ("CP&L")) (collectively, "Duke")—are obligated to compensate Duke for alleged liabilities linked to coal combustion residuals ("CCRs"), i.e., coal ash, at fifteen Duke-owned power plants in North and South Carolina.

3. The Motions each seek to establish as a matter of law that the moving insurer's insurance policy at issue contains a pollution exclusion, thereby barring Duke's claims for coverage under those policies. Having considered the Motions, the materials submitted in support of and in opposition to the Motions, the arguments of counsel at the hearing on the Motions, and other appropriate matters of record, the Court hereby **DENIES** the Arrowood and Continental Motions.

> *Pillsbury Winthrop Shaw Pittman LLP, by Mark J. Plumer, Matthew G. Jeweler, Jeffrey W. Mikoni, Aaron D. Coombs, W. Kirk Gandy, and Barry Fleishman, and Hunton & Williams LLP, by A. Todd Brown and Ryan G. Rich, for Plaintiffs Duke Energy Carolinas, LLC and Duke Energy Progress, LLC.*

> *White and Williams, LLP, by Shane Heskin, Adam Berardi, and Sara C. Tilitz, O'Melveny & Myers, LLP, by Jonathan D. Hacker, Law Offices of John F. Baughman, PLLC, by John Baughman and Nathaniel Marmon, and Fitzgerald Litigation, by Andrew L. Fitzgerald, for Defendants Century Indemnity Company, Federal Insurance Company, and Pacific Employers Insurance Company.*

*Freeborn & Peters LLP, by Bruce M. Engel and Ryan G. Rudich, for Defendant Arrowood Indemnity Company.*

*Hinkhouse Williams Walsh LLP, by William C. Joern and Richard McDermott, and Pope Aylward Sweeney & Stephenson, LLP, by Robert Aylward, for Defendant The Continental Insurance Company for London Guarantee and Accident Company of New York.*

*Windels Marx Lane & Mittendorf LLP, by Eric J. Konecke and Stefano V. Calogero, and Hamilton Stephens Steele & Martin, PLLC, by M. Aaron Lay, for Defendant Allstate Insurance Company.*

*Hogan Lovells US LLP, by Alexander B. Bowerman, and McAngus, Goudelock & Courie, PLLC, by Jeffrey B. Kuykendal, for Defendant Assurances Générales de France.*

*Jackson & Campbell PC, by Erin N. McGonagle and Peter J. Jenkins, and Butler Weihmuller Katz Craig LLP, by L. Andrew Watson, for Defendants AIG Property Casualty Company, American Home Assurance Company, and Lexington Insurance Company.*

*Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., by Paul W. Kalish, Squire Patton Boggs (US) LLP, by G. David Godwin, and McAngus, Goudelock & Courie, PLLC, by Jeffrey B. Kuykendal, for Defendants Allianz Global Risks US Insurance Company, Allianz Underwriters Insurance Company, and Fireman's Fund Insurance Company.*

*Rivkin Radler LLP, by George D. Kappus, Greg E. Mann, and Alan S. Rutkin, and Goldberg Segalla, by David L. Brown, for Defendants Associated Electric and Gas Insurance Services Limited, Berkshire Hathaway Direct Insurance Company, and TIG Insurance Company.*

*Karbal Cohen Economou Silk Dunne LLC, by Dena Economou, Thomas D. Ferguson, and Gerald E. Ziebell, Shipman & Goodwin LLP, by Edward B. Parks, II, and Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by D.J. O'Brien III, for Defendants First State Insurance Company and Twin City Fire Insurance Company.*

*Saiber LLC, by Michael J. Balch, and McAngus, Goudelock & Courie, PLLC, by John T. Jeffries, John P. Barringer, and Jeffrey B. Kuykendal, for Defendant General Reinsurance Corporation.*

*Clausen Miller P.C., by Ilene M. Korey and Amy R. Paulus, and Fox Rothschild LLP, by Jeffrey P. MacHarg, for Defendant Old Republic Insurance Company.*

*Kennedys CMK LLP, by John D. LaBarbera, Benjamin A. Blume, and Michael J. McNaughton, and James, McElroy & Diehl, P.A., by Adam L. Ross, for Defendant United States Fire Insurance Company.*

Bledsoe, Chief Judge.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

4.      The Court does not make findings of fact on motions for summary judgment. Instead, the Court summarizes material facts it considers to be undisputed to provide context for the Motions.

### A.      The Royal Policy

5.      The Arrowood Motion is focused on one policy: Royal Indemnity Company Policy No. EC 103320 (the "Royal Policy").[2]  The Royal Policy was issued through Arrowood's predecessor, Royal Indemnity Company ("Royal"), on 28 January 1985 to Duke Power and was in effect from 31 October 1984 to 31 October 1985.[3]

6.      At the time of issuance, the Royal Policy's signed declarations page stated that the policy followed form[4] to California Union Policy No. ZCX 00 74 50, which was

---

[2] (*See* Aff. Ryan G. Rudich [hereinafter "Rudich Aff."] Ex. 1, ECF No. 772.1.)

[3] (*See* Rudich Aff. Ex. 1, at ARROWOOD0000517.)

[4] This Court has broadly described follow form coverage in an earlier ruling in this action as follows:

> Excess-level coverage policies like those at the center of this case will often "follow form" to an underlying policy.  For example, Excess Insurer offers Excess Policy B to provide excess coverage on another policy held by

issued by California Union Insurance Company ("Cal Union") to Duke Power for the period from 31 October 1984 through 31 October 1985 (the "1984–85 Cal Union Policy").[5] It is undisputed that the signed declarations page, together with the excess liability policy form, a nuclear liability exclusion, and two endorsements, comprised the Royal Policy at the time it was issued.[6] These same documents comprise the policy copy in Duke's files. Arrowood's files, however, also include a copy of the policy with an unsigned pollution exclusion endorsement purportedly issued on 11 July 1985.[7] Arrowood's files also contain an additional unsigned endorsement dated 11 July 1985 providing that the Royal Policy would no longer follow form to the underlying 1984–85 Cal Union Policy and instead would follow form to Ranger Insurance Company Policy No. EUL 300579.[8]

---

Policyholder, Primary Policy A. Excess Policy B's language defines Excess Policy B's coverage by incorporating Primary Policy A's terms. Excess Policy B "follows form" to Primary Policy A or is said to provide follow-form coverage.

*Duke Energy Carolinas, LLC v. AG Ins. SA/NV*, 2018 NCBC LEXIS 54, at *8 (N.C. Super. Ct. June 4, 2018) (citations omitted).

[5] (*See* Rudich Aff. Ex. 1, at ARROWOOD0000517.) The Royal Policy follows form to the 1984–85 Cal Union Policy in accordance with Condition 1, which provides as follows: "This policy is subject to the same terms, definitions, exclusions and conditions (except as regards the premium, the amount and limits of liability and except as otherwise provided herein) as are contained in or as may be added to the underlying policies[.]" (Rudich Aff. Ex. 1, at ARROWOOD0000526.)

[6] (*See* Rudich Aff. Ex. 1, at ARROWOOD0000517–19, ARROWOOD0000526–28.)

[7] (*See* Rudich Aff. Ex. 1, at ARROWOOD0000522.)

[8] (*See* Rudich Aff. Ex. 1, at ARROWOOD0000524.)

B.    The London Guarantee Policies

7.    London Guarantee and Accident Company of New York ("London Guarantee") issued two policies to Duke Power: (i) Policy No. LX3278836, for the period 31 October 1981 to 31 October 1982 (the "1981–82 London Guarantee Policy"),[9] and (ii) Policy No. LX1898119, for the period 31 October 1982 to 31 October 1983 (the "1982–83 London Guarantee Policy"; together, the "London Guarantee Policies").[10] Continental is the successor to all rights and liabilities under the London Guarantee Policies.  (Decl. William C. Joern Supp. Defs.' Mot. Partial Summ. J. Regarding Allocation ¶ 2, ECF No. 1280.7.)

8.    Neither Continental nor Duke has a pollution exclusion endorsement attached to its copies of these policies in its files.  Continental contends, however, that testimony from "the sole witness with first-hand knowledge of the underwriting of the Policies[,]" (Continental's Mem. Law Supp. Mot. Summ. J. Basis Pollution Exclusion 3 [hereinafter "Continental's Supp. Br."], ECF No. 927), and other secondary evidence establishes that each policy in fact contains a pollution exclusion.

9.    The current Motions were filed on 4 December 2020.  After full briefing by the parties, the Court held a hearing on the Motions on 25 February 2021 (the "Hearing"), at which all parties were represented by counsel.  The Motions are now ripe for resolution.

---

[9] (*See* Aff. William C. Joern [hereinafter "Joern Aff."] Ex. 1A, ECF No. 932.)

[10] (*See* Joern Aff. Ex. 2A, ECF No. 932.)

## II.

## LEGAL STANDARD

10. Under Rule 56 of the North Carolina Rules of Civil Procedure, "[s]ummary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Da Silva v. WakeMed*, 375 N.C. 1, 10 (2020) (quoting N.C. R. Civ. P. 56(c)). "A genuine issue of material fact is one that can be maintained by substantial evidence." *Curlee v. Johnson*, 2021-NCSC-32, ¶ 11 (citation and internal quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and means more than a scintilla or a permissible inference[.]" *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681 (2002) (citations omitted). "The summary judgment standard requires the trial court to construe evidence in the light most favorable to the nonmoving party." *Draughon v. Evening Star Holiness Church of Dunn*, 374 N.C. 479, 482 (2020).

11. "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579 (2002). The movant may meet this burden either: (1) "by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense" or (2) "by showing through discovery that the opposing party cannot produce evidence to support an essential element of [its] claim[.]" *Dobson v. Harris*, 352 N.C. 77, 83 (2000)

(citations omitted). If the movant meets its burden, "the burden then shifts to the nonmovant to come forward with specific facts establishing the presence of a genuine factual dispute for trial." *Pennington*, 356 N.C. at 579; *see also* N.C. R. Civ. P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.").

III.

ANALYSIS

12.  In considering the Motions, it bears emphasizing that "[a]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *C. D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co.*, 326 N.C. 133, 142 (1990). "[D]etermining the meaning of language in an insurance policy presents a question of law for the Court." *Accardi v. Hartford Underwriters Ins. Co.*, 373 N.C. 292, 295 (2020). "When interpreting an insurance policy, courts apply general contract interpretation rules." *Id.* "As in other contracts, the objective of construction of terms in an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354 (1970). "The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect." *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506 (1978); *see also Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 364 N.C. 1, 9 (2010) ("We construe all clauses of an insurance policy together, if possible, so as to bring them into harmony." (citation

omitted)). "[W]herever possible, the policy will be interpreted in a manner which gives, but never takes away, coverage." *Wash. Hous. Auth. v. N.C. Hous. Auths. Risk Retention Pool*, 130 N.C. App. 279, 281 (1998).

13. Further, "a contract of insurance should be given that construction which a reasonable person in the position of the insured would have understood it to mean[.]" *Grant v. Emmco Ins. Co.*, 295 N.C. 39, 43 (1978). "If the policy contains a definition of a term, the court applies that meaning unless the context requires otherwise. However, if the policy fails to define a term, the court must define the term in a manner that is consistent with the context in which the term is used, and the meaning accorded to it in ordinary speech." *Accardi*, 373 N.C. at 295.

14. In addition, "North Carolina courts have long held that any ambiguity or uncertainty as to the words used in the policy should be construed against the insurance company and in favor of the policyholder or beneficiary. If a court finds that no ambiguity exists, however, the court must construe the document according to its terms." *Id.* At the end of the day, the "intention of the parties as gathered from the language used in the policy is the polar star that must guide the courts[.]" *Cowell v. Gaston Cnty.*, 190 N.C. App. 743, 746 (2008) (quoting *McDowell Motor Co. v. N.Y. Underwriters Ins. Co.*, 233 N.C. 251, 253 (1951)).

15. The Arrowood and Continental Motions present issues of contract formation. In considering such issues, our Supreme Court has recognized that "[f]or an agreement to constitute a valid contract, the parties' minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on

by which they may be settled, there is no agreement." *Chappell v. Roth*, 353 N.C. 690, 692 (2001) (citation and internal quotation marks omitted). Simply put, "[t]here is no contract unless the parties thereto assent, and they must assent to the same thing, in the same sense." *Horton v. Humble Oil & Refin. Co.*, 255 N.C. 675, 679 (1961) (citation omitted).

16. With these principles in mind, the Court addresses each Motion in turn.

A. The Arrowood Motion

17. Arrowood focuses its Motion on the unsigned 11 July 1985 pollution exclusion endorsement in its Royal Policy files. Arrowood contends that the endorsement is valid and binding as a matter of law and applies to bar Duke's claims under that policy. Alternatively, Arrowood contends that if the endorsement is not valid and binding, the Royal Policy continues to follow form to the 1984–85 Cal Union Policy (as the Royal Policy provided at issuance). In that event, Arrowood contends that the 1984–85 Cal Union Policy contains a pollution exclusion that bars Duke's claims.

18. For its support, Arrowood points to the presence of the pollution exclusion endorsement in its files as well as substantial secondary evidence supporting its contention that the Royal Policy was intended to and did include a pollution exclusion. (Arrowood's Mem. Law Supp. Mot. Summ. J. Pollution Exclusion 4–5 [hereinafter "Arrowood's Supp. Br."], ECF No. 956.) Arrowood argues that this evidence is undisputed and susceptible to but a single conclusion—that the Royal Policy contains a pollution exclusion—requiring the dismissal of Duke's claims.

(Arrowood's Supp. Br. 9–13; Arrowood's Reply Mem. Law Supp. Mot. Summ. J. Pollution Exclusion 6–10, ECF No. 1123.)

19.     Duke's evidence in opposition largely consists of the undisputed fact that the Royal Policy, when issued in January 1985, did not contain a pollution exclusion endorsement and that Duke's files do not contain the unsigned 11 July 1985 endorsement on which Arrowood relies.  (Arrowood's Supp. Br. 4–5, 7–10.)  While Duke argues that Arrowood has not offered evidence that Duke ever agreed to or received the endorsement, Duke does not offer affirmative evidence that it did not. (Duke's Arrowood Opp'n Br. 1, 3–5, ECF No. 1053.)  In this way, the current action is unlike *Burlington Insurance Co. v. Fishermans Bass Circuit, Inc.*, 165 N.C. App. 439 (2004), a case relied upon heavily by both parties.  In that case, the insurer contended that the policy at issue contained an endorsement in its files, which the insured disputed by tendering affidavit testimony from the insured's president affirmatively representing that he had reviewed the policy at the time of issuance and that it did not contain the disputed endorsement.  *Burlington Ins. Co.*, 165 N.C. App. at 441–43, 445–47.  Duke offers no such evidence here.

20.     Nevertheless, Duke does point out that the "Changes" provision in the Royal Policy states that the policy's terms cannot be "waived or changed, except by endorsement issued to form a part hereof, *signed by an authorized representative of the Company*."[11]  (Emphasis added.)  It is undisputed that the endorsement Arrowood

---

[11] (*See* Rudich Aff. Ex. 1, at ARROWOOD0000526.)

relies upon here—which changed the terms of the policy as issued—is unsigned.[12] While Arrowood offers evidence that its corporate policy was not to retain signed copies, Duke responds with evidence that Arrowood's policy was inconsistent with industry custom and practice,[13] and the fact remains that no signed copy exists in either party's files.

21.     Although it does not appear that any of the Royal Policy's acknowledged and disputed endorsements bear authorized signatures,[14] the Court nevertheless concludes that the lack of a contractually required signature on the purported pollution exclusion endorsement here raises an issue of fact as to whether a signed copy of the endorsement ever existed or whether the signature requirement was ever changed or waived.  This factual dispute is sufficient to deny the Arrowood Motion on its primary argument.

22.     As to Arrowood's alternative contention, an issue of fact remains concerning whether the 1984–85 Cal Union Policy contains a pollution exclusion and consequently precludes summary judgment for Arrowood on this theory.  Arrowood contends that policy was mistakenly issued on 28 January 1985 without a pollution exclusion, that Duke's wholesale insurance broker recognized this error in preparing for renewal nine months later on 6 August 1985, and that a signed pollution exclusion endorsement was issued the next day.  (Moving Chubb Defs.' Mem. Law Supp. Mot.

---

[12] (*See* Rudich Aff. Ex. 1, at ARROWOOD0000524.)

[13] (*See* Connolly Rebuttal Report ¶¶ 27–29.)

[14] (*See* Rudich Aff. Ex. 1, at ARROWOOD0000519–24.)

Partial Summ. J. Basis Pollution Exclusion 8–9 [hereinafter "Chubb's Supp. Br."], ECF No. 966; Arrowood's Supp. Br. 13–14.)

23. Arrowood argues that the fact that an unsigned pollution exclusion endorsement was retained in Cal Union's underwriting file and signed copies of the same endorsement were found in Arrowood's underwriting file establish as a matter of law that the 1984–85 Cal Union Policy contains a pollution exclusion. (Chubb's Supp. Br. 14–15.) Arrowood also relies on evidence from the policy binder and a "mock-up," which Arrowood contends reflected the agreed terms, both suggesting that the parties intended for a pollution exclusion to be included in the policy. (Moving Chubb Defs.' Reply Mem. Law Supp. Mot. Partial Summ. J. Basis Pollution Exclusion 3–7, ECF No. 1116.)

24. It is undisputed, however, that a pollution exclusion endorsement was not included in the original documents comprising the 1984–85 Cal Union Policy and that Duke does not have a pollution exclusion endorsement (signed or unsigned) in its files.[15] It is also undisputed that an internal Cal Union "Instructions/Work Order" document in the underwriting file for the policy dated 4 December 1984 (one month after the policy incepted and the policy binder was issued) does not identify a pollution exclusion as one of the endorsements in a checklist of potential endorsements that should be included in the policy.[16] There is also a disputed issue

---

[15] (*See* Chubb's Supp. Br. 8; Duke's Opp'n Moving Chubb Defs.' Mot. Partial Summ. J. Basis Pollution Exclusion 3 [hereinafter "Duke's Chubb Opp'n Br."], ECF No. 1063; *see also* Duke's Chubb Opp'n Br. Ex. 25, ECF 1063.18.)

[16] (*See* Duke's Chubb Opp'n Br. Ex. 28, ECF No. 1063.21.)

of fact concerning whether the broker binding coverage, Russell Bergen, was Duke's broker or instead an agent of the insurer,[17] and Arrowood does not otherwise offer evidence that Duke agreed or consented to the pollution exclusion endorsement.

25. Although Arrowood offers compelling evidence that a pollution exclusion was intended to be and was in fact included in the policy, the Court cannot conclude, when viewing the evidence of record in the light most favorable to Duke, that a pollution exclusion endorsement was included in the Royal Policy as a matter of law. Accordingly, the Court concludes that the Arrowood Motion presents a factual issue for trial and must be denied.

B. The Continental Motion

26. The parties dispute whether either Duke or Continental has a complete copy of one or both London Guarantee Policies in its files.[18]  It is undisputed, however, that neither side's copy of either policy contains a pollution exclusion. (*See* Continental's Supp. Br. 2–3; *see* Duke's Continental Opp'n Br. 1–2.)  Continental

---

[17] (*See, e.g.*, Duke's Chubb Opp'n Br. Ex. 27 Dep. Mark G. Ying, dated June 27, 2018, at 33:18–20, ECF No. 1063.20; Duke's Chubb Opp'n Br. Ex. 30 Dep. Mark G. Ying, dated Nov. 22, 2019, at 52:19–53:16, ECF No. 1063.23; Duke's Chubb Opp'n Br. Ex. 31 Dep. Jeffrey G. McKinley, Vol. I, dated Oct. 28, 2020, at 82:13–83:8, ECF No. 1063.24; Duke's Opp'n Arrowood's Mot. Summ. J. Pollution Exclusion [hereinafter "Duke's Arrowood Opp'n Br."] Ex. 37 Excerpted Rebuttal Expert Report & Ops. Dennis R. Connolly, dated May 22, 2020 [hereinafter "Connolly Rebuttal Report"] ¶¶ 14, 23, 25–26, ECF No. 1053.12.)

[18] Duke asserts that the copies of the London Guarantee Policies at issue are complete and final and relies upon *State Distrib. Corp. v. Travelers Indem. Co.*, 224 N.C. 370, 373–74 (1944), to argue that the Court should therefore apply the parol evidence rule to bar consideration of any evidence offered to vary the policies' terms. (Duke's Opp'n Continental's Mot. Summ. J. Basis Pollution Exclusion 8–13 [hereinafter "Duke's Continental Opp'n Br."], ECF No. 1054.)  The Court concludes, however, that there is an issue of fact as to whether any of the copies of the policies on which the parties rely is complete and reflects an accurate and final version of one or both London Guarantee Policies.  Thus, the Court will consider parol evidence in deciding Continental's Motion.

argues that it has offered undisputed testimony and documentary evidence that establishes that Swett & Crawford acted as Duke's broker and agreed on behalf of Duke to the inclusion of a pollution exclusion in the 1981–82 London Guarantee Policy.  (Continental's Supp. Br. 14–16.)  Continental further contends that, upon renewal of that policy the following year, the exclusion became a part of the 1982–83 London Guarantee Policy as well.  (Continental's Supp. Br. 23–24.)

27.    Duke has offered evidence in opposition, however, that Swett & Crawford was not Duke's agent and did not act on Duke's behalf.  (*See* Duke's Continental Opp'n Br. 13–19.)  To the contrary, Duke's evidence tends to show that Swett & Crawford acted on behalf of London Guarantee, including undisputed evidence that Swett & Crawford's agents signed the London Guarantee Policies as "duly authorized representatives" of London Guarantee.[19]  Duke also points out that Continental's primary witness, Kenneth Goldstein, London Guarantee's lead underwriter on the Policies and on whose testimony Continental heavily relies, admitted that he did not have specific knowledge that a pollution exclusion endorsement had been issued for the policies London Guarantee sold to Duke.[20]

28.    Most significantly, however, neither Continental, nor Duke, nor Duke's broker, Marsh & McLennan ("Marsh"), has a copy of the pollution exclusion in its

---

[19] (*See* Joern Aff. Ex. 1B, at DUKE_CAIR_000003970; Joern Aff. Ex. 2B, at DUKE_CAIR_000003861, ECF No. 932.)

[20] (Duke's Continental Opp'n Br. 8, 11; *see* Index Exs. Suppl. Aff. William C. Joern Ex. 47 Dep. Kenneth Fred Goldstein, dated Oct. 29, 2019, at 35:5–11, ECF No. 1104.1.)

policy files for either London Guarantee Policy.[21] While each has policy documents arguably comprising both Policies, none has a copy of a pollution exclusion in either policy. Moreover, the copy of the declarations page for the 1982–83 London Guarantee Policy in Continental's, Duke's, and Marsh's respective files lists an endorsement for a workmen's compensation exclusion yet contains no similar reference to an endorsement for pollution exclusion.[22] A factfinder could reasonably conclude that the absence of such an endorsement in this context is evidence that the parties did not agree to a pollution exclusion.

29. Viewing this evidence in the light most favorable to Duke, the Court concludes that an issue of fact remains concerning whether either of the London Guarantee Policies contain a pollution exclusion. Continental's Motion must therefore be denied.

IV.

CONCLUSION

30. **WHEREFORE**, for the reasons set forth above, the Court hereby **ORDERS** as follows:

    a. The Arrowood Motion is hereby **DENIED**; and

---

[21] (*See* Joern Aff. Exs. 1A, 1B, 1C, 2A, 2B, 2C, ECF No. 932.) Continental's copy of the 1981–82 London Guarantee Policy is at Exhibit 1A, Duke's is at Exhibit 1B, and Marsh's is at Exhibit 1C. None of these copies references a pollution exclusion, although Marsh's copy of the earlier binder for this policy contains handwritten notes stating "sudden + acc pollution" in the "Other conditions" area of the form. (Joern Aff. Ex. 1C, at MARSH005316.) Similarly, Exhibits 2A, 2B, and 2C are Continental's, Duke's, and Marsh's respective copies of the 1982–83 London Guarantee Policy. Again, none of these copies contains a pollution exclusion.

[22] (*See* Joern Aff. Ex. 2A, at CONT000183; Joern Aff. Ex. 2B, at DUKE_CAIR000003861; Joern Aff. Ex. 2C, at MARSH 005157.)

b. The Continental Motion is hereby **DENIED**.

**SO ORDERED**, this the 4th day of August, 2021.


                <u>/s/ Louis A. Bledsoe, III</u>
                Louis A. Bledsoe, III
                Chief Business Court Judge