IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-702

Filed 3 June 2026

Forsyth County, No. 21CVS006295-330

JOHN DOE, Plaintiff,

v.

ROBERT FULTON and WINSTON-SALEM/FORSYTH COUNTY BOARD OF EDUCATION, Defendants.

Appeal by Defendant from order entered 28 April 2025 by Judge David L. Hall in Forsyth County Superior Court. Heard in the Court of Appeals 28 January 2026.

*Lanier Law Group, P.A., by Robert O. Jenkins, for Plaintiff-Appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, LLP, by Robert J. King, Jr., S. Collins Saint, and William A. Robertson, for Defendant-Appellant.*

GRIFFIN, Judge.

Defendant Winston-Salem/Forsyth County Board of Education appeals from the trial court's order denying Defendant's motion to dismiss, arguing Plaintiff's tort claims are barred by governmental immunity, all claims in the Complaint were forever barred by the ten-year statute of repose contained in N.C. Gen. Stat. § 1-52(16) (2019), and Plaintiff's constitutional claim is not colorable. We affirm the trial court.

## I. Factual and Procedural Background

In 2019, the General Assembly unanimously passed the SAFE Child Act, including section 4.2(b), which states,

> Effective from January 1, 2020, until December 31, 2021, this section revives any civil action for child sexual abuse otherwise time-barred under G.S. 1-52 as it existed immediately before the enactment of this act.

An Act to Protect Children From Sexual Abuse and to Strengthen and Modernize Sexual Assault Laws (SAFE Child Act), S.L. 2019-245, § 4.2(b), 2019 N.C. Sess. Laws 1231, 1235.

Plaintiff instituted this suit by filing a complaint against Defendant and Robert Fulton on 22 December 2021.[1] The complaint alleges in 1992, Plaintiff, then approximately 14 years old, attended John F. Kennedy Middle School in Winston-Salem. At that time, Fulton was employed at John F. Kennedy Middle School as a social studies teacher and homeroom supervisor, and Plaintiff was enrolled in Fulton's social studies class and homeroom. During this time, Fulton sexually assaulted Plaintiff and warned Plaintiff not to tell anyone or else Fulton "would abuse Plaintiff in worse ways." Plaintiff further alleges between approximately 1992 and 1993, Fulton sexually assaulted Plaintiff four times; despite this, Defendant continued employing Fulton, transferring him from John F. Kennedy Middle School to West Forsyth High School the same year Plaintiff enrolled at West Forsyth High School. Plaintiff alleges Fulton was employed by Defendant and operating under that

---

[1] Robert Fulton did not participate in the motion to dismiss nor is he involved in this appeal.

employment during the alleged events and actions. Additionally, Plaintiff alleges Defendant "breached its duty in hiring, retaining and supervising [] Fulton" by "fail[ing] to properly train [] Fulton regarding appropriate interaction with children;" "fail[ing] to properly supervise [] Fulton;" "fail[ing] to properly supervise [] Fulton during his use of the school facilities;" "fail[ing] to properly supervise [] Fulton during [Defendant] sanctioned Social Studies Classes and his supervision of Homeroom Classes taken with young students whose parents had entrusted their children to [Defendant] and its employees;" "fail[ing] to properly supervise [] Fulton and his interactions with the young students whose parents had entrusted their children to the Board and its employees;" and "fail[ing] to intervene when there was clear and convincing evidence of the inappropriate relationship between [] Fulton and young students who participated in the Social Studies Class or Homeroom Period for which he was the supervisor at John F. Kennedy [Middle School.]"

Based on these events, Plaintiff asserts six of claims for relief: assault/battery; negligent hiring, retention, and supervision; negligent infliction of emotional distress; intentional infliction of emotional distress; constructive fraud; and violation of Article I, Section 15 and Article IX, Section 2 of the North Carolina Constitution. Plaintiff alleges Defendant "is not entitled to governmental immunity for the conduct alleged" and "upon information and belief, at all times relevant hereto, Defendant . . . waived any immunity through its purchase and maintenance of liability insurance coverage applicable to the acts and/or failures to act alleged herein."

On 26 August 2022, Defendant filed a motion to dismiss, arguing the trial court should dismiss Plaintiff's action against it "because [Defendant] has governmental immunity for these claims to the extent that it does not have insurance that covers these claims, as it has not waived governmental immunity;" "because Section 4.2(b) of Session Law 2019-245 is unconstitutional, thereby necessitating dismissal of all claims because they are barred by the statute of limitations, statute of repose, and/or doctrine of laches;" because "[Defendant] may not be held liable for constitutional claims arising from vicarious liability; and . . . Plaintiff does not allege he notified [Defendant] or any employees of [Defendant] regarding the alleged conduct of Robert Fulton;" and "because punitive damages cannot be awarded against local governmental entities as a matter of law." Defendant attached an affidavit from its General Counsel, who swore she had "commenced a diligent search and inquiry of our records to find a copy of any insurance policies that may have been in place at any time in or around the time periods described in the Complaint" and "ha[d] not located any such records yet." Defendant's General Counsel also swore at that time she was "unaware of any applicable insurance coverage for [Defendant] for the time periods described in the Complaint" and would "amend this Affidavit in the event any such policies are located."

In addition to the affidavit, Defendant attached an exhibit to its General Counsel's affidavit which included a letter from Liberty Mutual, with whom Defendant had a Commercial General Liability Policy effective 1 July 2021 to 1 July

2022, denying coverage, in part, due to the sexual misconduct and abuse exclusions to the policy.

Also on 26 August 2022, both Plaintiff and Defendant filed a joint motion for stay, pending various appeals in relevant cases at our Supreme Court, which the trial court granted on 29 August 2022. This stay was lifted in February 2025, and Defendant filed an amended motion to dismiss on 28 February 2025. In this amended motion to dismiss, Defendant first moved "to dismiss the first, second, third, fourth, and fifth causes of action against it pursuant to Rule 12(b)(1), (2), and (6) because [Defendant] has governmental immunity for these claims to the extent that it does not have insurance that covers these claims, as it has not waived governmental immunity." Second, Defendant then moved to dismiss because "Plaintiff's claims are barred by the applicable statute of repose and/or laches, and therefore Plaintiff cannot state a claim upon which relief may be granted" because "the applicable statute of repose had run before the enactment of S.L. 2019-245." Third, Defendant moved "to dismiss all causes of action against it pursuant to Rule 12(b)(6) because such claims fail to state a cause of action against [Defendant]," including moving that "Plaintiff's North Carolina constitutional claims should be dismissed pursuant to Rule 12(b)(6) because such claims fail to state a cause of action against [Defendant]." Last, Defendant moved "Plaintiff's claim for punitive damages against [Defendant] should be dismissed pursuant to Rule 12(b)(6) because punitive damages cannot be awarded against local governmental entities as a matter of law" and "Plaintiff has

not alleged fraud, malice, or willful or wanton conduct against [Defendant]." Attached to Defendant's amended motion to dismiss was a second affidavit from Defendant's General Counsel, in which the General Counsel swore she received a letter addressing an insurance policy in effect from 1 July 1991 to 1 July 1992. This letter denied coverage to Defendant for this suit, in relevant part, because of an "abuse or molestation exclusion." Defendant's General Counsel's affidavit also swore she "conducted a review to determine if any other communications related to insurance coverage have been received by [Defendant] since [her] first affidavit in August 2022 [but] found no further communication related to insurance coverage for the [l]awsuit." She further swore she "ha[s] sought insurance coverage for the [l]awsuit on behalf of [Defendant] without success [and Defendant] is currently paying the entire cost of defense for the [l]awsuit due to the lack of insurance coverage."

The policy covering 1 July 1991 to 1 July 1992 was attached to the affidavit containing the aforementioned "abuse or molestation exclusion" to Defendant's liability coverage during that time period.

On 31 March 2025, the trial court held a hearing on the amended motion to dismiss at which neither party presented any additional evidence or affidavits. On 28 April 2025, the trial court issued an order "having carefully considered the Memoranda submitted by the parties, the arguments of counsel, the applicable law and other instructive authority and conclude[d] [Defendant's] Amended Motion

should be denied." On 7 May 2025, Defendant filed its notice of appeal.

## II.   Analysis

Defendant argues the trial court erred in denying its motion to dismiss for three reasons. First, Defendant argues "[t]he trial court erred by failing to dismiss Plaintiff's tort claims as barred by governmental immunity" because Defendant "does not have applicable liability insurance." Second, Defendant argues "[t]he trial court erred by permitting repose-barred claims to proceed" because "[a]ll claims in the Complaint were forever barred by the ten-year statute of repose contained in N.C.[ Gen. Stat.] §1-52(16) (2019)" and "[c]onstruing the Revival Window in a manner consistent with the Constitution, it can only operate to revive claims that were not previously barred by a statute of repose." Third, Defendant argues "[t]he trial court erred by failing to dismiss Plaintiff's constitutional claim against [Defendant]" because "Plaintiff's purported constitutional claim is not colorable" since, Defendant argues, it "fail[s] to allege facts [Plaintiff] was deprived of a sound, basic education" and "Plaintiff offers nothing but conclusory allegations that [Defendant] knew or should have known that Fulton had sexually assaulted [Plaintiff]." We hold the trial court did not err in denying the motion to dismiss at this time and affirm the trial court.

## A.  Jurisdiction

Defendant moved to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1), (2), and (6) of the North Carolina Rules of Civil Procedure.

"Generally, a trial court's decision to deny a Rule 12 motion to dismiss is interlocutory and not immediately appealable." *Brady v. Charlotte-Mecklenburg Bd. of Educ.*, 299 N.C. App. 560, 564, 920 S.E.2d 180, 188 (2025) (citing *Can Am S., LLC v. State*, 234 N.C. App. 119, 122, 759 S.E.2d 304, 307 (2014)). "However, an immediate right of appeal exists where the order affects a substantial right or is an adverse ruling on personal jurisdiction." *Id.* (citing *Can Am S.,* 234 N.C. App. at 122, 759 S.E.2d at 307). To that end, "it is the appellant's burden to present appropriate grounds for acceptance of an interlocutory appeal, and not the duty of this Court to construct arguments for or find support for appellant's right to appeal." *Hanesbrands Inc. v. Fowler*, 369 N.C. 216, 218, 794 S.E.2d 497, 499 (2016) (citation modified). "Where the appellant fails to carry the burden of making such a showing to the court, the appeal will be dismissed." *Id.*

We hold Defendant carries its burden of showing the first two issues affect a substantial right. First, "an order denying a motion to dismiss made pursuant to Rule 12(b)(6) because of governmental immunity is immediately appealable as it affects a substantial right; governmental immunity 'is an immunity from suit rather than a mere defense to liability; and . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Brady*, 299 N.C. App. at 564, 920 S.E.2d at 188 (omission in original) (quoting *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337–38, 678 S.E.2d 351, 354 (2009)). Likewise, "denial of a Rule 12(b)(2) motion premised on sovereign immunity constitutes an adverse ruling on personal

jurisdiction and is therefore immediately appealable under [N.C. Gen. Stat. §] 1-277(b)." *Green v. Howell*, 274 N.C. App. 158, 164, 851 S.E.2d 673, 678 (2020) (citation and internal marks omitted). "We will not, however, review whether the trial court properly denied Defendants' motion on the basis of Rule 12(b)(1) as 'that motion does not support an interlocutory appeal.'" *Brady*, 299 N.C. App. at 565, 920 S.E.2d at 189 (quoting *Murray v. Univ. of N.C. at Chapel Hill*, 246 N.C. App. 86, 93, 782 S.E.2d 531, 536 (2016)). Thus, because Defendant motioned to dismiss based on governmental immunity, we have jurisdiction to hear Defendant's appeal as to its first issue of governmental immunity. *See Can Am S., LLC v. State*, 234 N.C. App. 119, 122, 759 S.E.2d 304, 307 (2014) ("Had defendants moved to dismiss based on the defense of sovereign immunity pursuant to Rule 12(b)(6), we would be bound by the longstanding rule that the denial of such a motion affects a substantial right and is immediately appealable under [N.C. Gen. Stat. §] 1–277(a).").

Second, Defendant submitted a memorandum of additional authority with our Supreme Court's recent decision in *Byrd v. Avco Corp.*, 389 N.C. 32, 927 S.E.2d 13 (2026). In *Byrd*, our Supreme Court expressly overruled this Court's holding in *Lee v. Baxter* that a "a statute of repose does not confer a substantial right and therefore an order denying a statute of repose defense is not immediately appealable." *Id.* at 41, 44, 927 S.E.2d at 20, 22 (citing *Lee v. Baxter*, 147 N.C. App. 517, 518–20, 556 S.E.2d 36, 37–38 (2001)). Accordingly, our Supreme Court held a statute of repose defense constitutes a substantial right. *Id.* at 44, 927 S.E.2d at 22. Thus, we have

jurisdiction to hear Defendant's appeal on the second issue in light of our Supreme Court's decision in *Byrd*, and we deny the PWC. *Id.*

Third, Defendant argues "[t]his Court should exercise pendent jurisdiction because the repose and constitutional issues are inextricably intertwined with [Defendant's] governmental immunity appeal" and "the exercise of pendent jurisdiction will prevent fragmented appeals, promote judicial economy, and serve the public interest." We must note that our current "jurisdictional doctrine does not recognize pendent appellate jurisdiction," *State v. Carver*, 277 N.C. App. 89, 94, 857 S.E.2d 539, 543 (2021), but we may allow an issue that is "inextricably intertwined with the issues before this Court as of right," *Carl v. State*, 192 N.C. App. 544, 550, 665 S.E.2d 787, 793 (2008).

Here, Defendant has not met its "burden to present appropriate grounds for acceptance of an interlocutory appeal," and we will not seek to find support or construct an argument outside of what Defendant has provided. *Hanesbrands Inc.*, 369 N.C. at 218, 794 S.E.2d at 499. Defendant argues "[t]he repose period, directives for maintenance of insurance records, and governmental immunity weave together in this appeal." Defendant recognizes that Plaintiff's constitutional claim "is . . . not barred by governmental immunity" but also argues "[d]eclining to address the constitutional claim . . . would unnecessarily delay the administration of justice," making "whether Plaintiff states a direct claim under the North Carolina Constitution . . . 'inextricably intertwined' with [Defendant's] governmental

- 10 -

immunity defense. . . ." We disagree because Plaintiff's constitutional claim could move forward irrespective of what happens to the tort claims in this appeal. In other words, Defendant has not met its burden to show how the constitutional claim is "*inextricably* intertwined" with the tort claims to merit interlocutory review in this appeal. *See Kornegay v. Aspen Asset Grp., LLC*, 204 N.C. App. 213, 240, 693 S.E.2d 723, 742 (2010) (holding a "separate legal claim for relief with separate remedies" to be "separate and distinct" rather than "inextricably intertwined"); *Inextricable*, The American Heritage Dictionary (3d ed. 1997) ("So intricate or entangled as to make escape impossible.").

Furthermore, because we affirm the trial court's denial of the motion to dismiss on the governmental immunity and statute of repose issues addressed below, on which Defendant heavily premises its argument for this Court to hear its third issue, the issues of judicial economy and fragmentary appeals do not arise as of yet because all the claims remain intact at this juncture.[2] Likewise, our denying review on the

---

[2] Our Supreme Court explained we narrowly construe exceptions to our rules when asked to grant an interlocutory appeal not otherwise appealable.

> The rule forbidding interlocutory appeals is designed to promote judicial economy by eliminating the unnecessary delay and expense of repeated fragmentary appeals and by preserving the entire case for determination in a single appeal from a final judgment. Additionally, appellate courts are almost always better able to decide the legal issues when they have before them a fully developed record. Given these reasons for the rule that interlocutory orders are not appealable, this Court should construe the exceptions to the general rule of non-appealability narrowly.

constitutional issue in this appeal would not extend a "manifest injustice to a party" or present the need "to expedite decision in the public interest" necessary to suspend our Rules of Appellate Procedure to grant review pursuant to Rule 2. N.C. R. App. P. 2.

Thus, Defendant has not met its burden for acceptance of an interlocutory appeal, and we hold the constitutional issue is not inextricably intertwined with the governmental immunity and statute of repose issues to grant us jurisdiction.

## B. Governmental Immunity

First, Defendant argues "[t]he trial court erred by failing to dismiss Plaintiff's tort claims as barred by governmental immunity" because Defendant "does not have applicable liability insurance." We disagree at this juncture.

"This Court has consistently stated that a denial of governmental immunity should be classified as an issue of personal jurisdiction under Rule 12(b)(2)." *Torres v. City of Raleigh*, 288 N.C. App. 617, 620, 887 S.E.2d 429, 433 (2023) (citing *Providence Volunteer Fire Dep't v. Town of Weddington*, 253 N.C. App. 126, 131, 800 S.E.2d 425, 430 (2017)). To determine how we evaluate the facts found by the trial court on our de novo review of governmental immunity, this Court has repeatedly looked to the posture of the case on appeal at the motion to dismiss phase at the trial court. *See Banc of Am. Sec. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690,

---

*Love v. Moore*, 305 N.C. 575, 580, 291 S.E.2d 141, 146 (1982) (internal citations omitted).

693, 611 S.E.2d 179, 182 (2005). "Three postures are typical: '(1) the defendant makes a motion to dismiss without submitting any opposing evidence; (2) the defendant supports its motion to dismiss with affidavits, but the plaintiff does not file any opposing evidence; or (3) both the defendant and the plaintiff submit affidavits addressing the personal jurisdiction issues.'" *Brady*, 299 N.C. App. at 566, 920 S.E.2d at 189–90 (quoting *Banc of Am. Sec. LLC*, 169 N.C. App. at 693, 611 S.E.2d at 182); *Torres*, 288 N.C. App. at 620–21, 887 S.E.2d at 433.

Here, the factual and procedural history of this case places this case in the second posture because Defendant submitted affidavits with its motion to dismiss, and Plaintiff did not. Even though the trial court conducted a hearing on the amended motion, no additional evidence was adduced to support the amended motion to dismiss. In this second posture, "the complaint's allegations 'can no longer be taken as true or controlling and [the] plaintiff[ ] cannot rest on the allegations of the complaint." *Providence*, 253 N.C. App. at 134, 800 S.E.2d at 432 (alterations in original) (quoting *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615–16, 532 S.E.2d 215, 218 (2000)). Rather, "the court must consider '(1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence).'" *Id.* at 134–35, 800 S.E.2d at 432 (quoting *Banc of Am.*, 169 N.C. App. at 693–94, 611 S.E.2d at 182–83).

Usually, "[w]hen this Court reviews a decision as to personal jurisdiction, it considers only 'whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.'" *Banc of Am. Sec. LLC,* 169 N.C. App. at 694, 611 S.E.2d at 183 (quoting *Replacements, Ltd. v. MidweSterling,* 133 N.C. App. 139, 140–41, 515 S.E.2d 46, 48 (1999)). But, "[u]nder Rule 52(a)(2) of the Rules of Civil Procedure, the trial court is not required to make specific findings of fact unless requested by a party." *Id.* (citation modified). Thus, "when the record contains no findings of fact, it is presumed that the [trial] court on proper evidence found facts to support its judgment." *Id.* (citation modified). "[I]n evaluating the appeal before us, we look to the uncontroverted allegations in the complaint and the uncontroverted facts in the sworn affidavit for evidence supporting the presumed findings of the trial court." *Bruggeman,* 138 N.C. App. 612, 616, 532 S.E.2d 215, 218.

Importantly, although we usually review "whether the findings of fact by the trial court are supported by competent evidence," *Banc of Am. Sec., LLC*, 169 N.C. App. at 694, 611 S.E.2d at 183, because governmental immunity is a question of law, "we review the trial court's decision as to personal jurisdiction de novo . . . when it turns solely on the question of governmental immunity." *Torres,* 288 N.C. App. at 622, 887 S.E.2d at 434 (citing *Farmer v. Troy Univ.*, 382 N.C. 366, 370, 879 S.E.2d 124, 127 (2022)); *Providence Volunteer Fire Dep't, Inc. v. Town of Weddington*, 382 N.C. 199, 209, 876 S.E.2d 453, 460 ("This Court reviews a trial court's decision to

grant or deny a motion to dismiss based upon the doctrine of governmental or legislative immunity using a de novo standard of review."); *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 368 N.C. 609, 611, 781 S.E.2d 282, 284 (2016) ("Questions of law regarding the applicability of sovereign or governmental immunity are reviewed de novo."). "In sum, we review the record to determine whether there was adequate evidence to support the trial court's conclusions of law, which we then review de novo." *Brady*, 299 N.C. App. at 567, 920 S.E.2d at 190.

"Governmental immunity shields municipalities and the officers or employees thereof sued in their official capacities from suits based on torts committed while performing a governmental function." *Kephart by Tutwiler v. Pendergraph*, 131 N.C. App. 559, 563, 507 S.E.2d 915, 918 (1998) (citing *Taylor v. Ashburn,* 112 N.C. App. 604, 607, 436 S.E.2d 276, 278 (1993)). "North Carolina courts have long held that 'governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions.'" *Smith v. Lane*, 298 N.C. App. 560, 562, 915 S.E.2d 465, 468 (2025) (quoting *Providence Volunteer Fire Dep't, Inc.*, 382 N.C. at 212, 876 S.E.2d at 462). However, governmental immunity is only available if it has not been waived. "Two ways a school board may waive governmental immunity are by purchasing liability insurance, or when engaging in a proprietary, as opposed to governmental, function[.]" *Brady*, 299 N.C. App. at 567, 920 S.E.2d at 190 (internal citations omitted). While the mere purchase of insurance alone is not enough to waive governmental immunity, "[i]f the action brought against

the [defendant] is excluded from coverage under its insurance policy, then there is no waiver of immunity." *Bullard v. Wake Cnty.*, 221 N.C. App. 522, 527, 729 S.E.2d 686, 689 (2012) (citation modified); N.C. Gen. Stat. § 115C-42 (2025) (providing a local board of education does not waive immunity by "the act of obtaining . . . insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort").

Here, because the trial court's order did not make, nor did it need to make, any findings of fact, we "presume that the trial court found facts sufficient to support its ruling, if such findings may be made from the record evidence," *Torres*, 288 N.C. App. at 622–23, 887 S.E.2d at 434, and "look to the uncontroverted allegations in the complaint and the uncontroverted facts in the sworn affidavit for evidence supporting the presumed findings of the trial court," *Bruggeman*, 138 N.C. App. at 616, 532 S.E.2d at 218, to inform our de novo review of governmental immunity.

First, we look to whether Defendant was engaged in a governmental function. Here, neither party argues Defendant was not engaged in a governmental function either in this appeal or in the affidavits provided to the trial court, and the uncontroverted allegations taken as true provide further support. The complaint alleges in 1992, Plaintiff, then approximately 14 years old, attended John F. Kennedy Middle School in Winston-Salem. At that time, Fulton was employed at John F. Kennedy Middle School as a social studies teacher and homeroom supervisor, and Plaintiff was enrolled in Fulton's social studies class and homeroom. During this

time, Fulton sexually assaulted Plaintiff and threatened Plaintiff not to tell anyone. Plaintiff further alleges between approximately 1992 and 1993, Fulton sexually assaulted Plaintiff four times; despite this, Defendant continued employing Fulton, transferring him from John F. Kennedy Middle School to West Forsyth High School the same year Plaintiff enrolled at West Forsyth High School. Additionally, Plaintiff alleges Defendant "breached its duty in hiring, retaining and supervising []Fulton" by "fail[ing] to properly train [] Fulton regarding appropriate interaction with children;" "fail[ing] to properly supervise [] Fulton;" "fail[ing] to properly supervise [] Fulton during his use of the school facilities;" "fail[ing] to properly supervise [] Fulton during [Defendant] sanctioned Social Studies Classes and his supervision of Homeroom Classes taken with young students whose parents had entrusted their children to [Defendant] and its employees;" "fail[ing] to properly supervise [] Fulton and his interactions with the young students whose parents had entrusted their children to the Board and its employees;" and "fail[ing] to intervene when there was clear and convincing evidence of the inappropriate relationship between [] Fulton and young students who participated in the Social Studies Class or Homeroom Period for which he was the supervisor at John F. Kennedy [Middle School]."

Being not otherwise controverted by Defendant's affidavits, these allegations support Defendant's engagement in a governmental function of education in running the "day-to-day administration and operation of those schools." *See Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 10–11, 418 S.E.2d 648, 655 (1992)

("Education is a governmental function so fundamental in this state that our constitution contains a separate article entitled 'Education.'").[3]

We now review whether Defendant waived governmental immunity. The only issue pertaining to waiver by the parties is whether Defendant had applicable liability insurance covering the alleged acts at the time of the alleged acts. *See Bullard*, 221 N.C. App. at 527, 729 S.E.2d at 689; N.C. Gen. Stat. § 115C-42 (2025). Here, Defendant presented affidavits describing the search for its insurance policies and two letters regarding its insurance policies covering 1 July 2021 to 1 July 2022 and 1 July 1991 to 1 July 1992.[4] Defendant's General Counsel's first affidavit swore she had "commenced a diligent search and inquiry of our records to find a copy of any insurance policies that may have been in place at any time in or around the time periods described in the Complaint" and "ha[d] not located any such records yet." Defendant's General Counsel also swore at that time she was "unaware of any

---

[3] Further, in *Rowan County Board of Education* our Supreme Court noted,

> Given that the State (1) has undertaken the responsibility to provide free public schools, (2) has delegated day-to-day administration and operation of those schools to counties and local school boards, including the power to bring suit to recover money or property "which may be due to or should be applied to the support and maintenance of the schools" and (3) has retained the duty of providing those local entities with considerable operating funds from state revenues, we hold that Rowan, in the matters at issue, was acting as an arm of the State and pursuing the governmental function of constructing and maintaining its schools.

*Id.* at 11, 418 S.E.2d at 655.

[4] Although not a part of the amended motion to dismiss, the trial court discussed the first affidavit during the hearing on the amended motion.

applicable insurance coverage for [Defendant] for the time periods described in the Complaint" and would "amend this Affidavit in the event any such policies are located." Defendant attached an exhibit to its General Counsel's affidavit which included a letter from Liberty Mutual, with whom Defendant had a Commercial General Liability Policy effective 1 July 2021 to 1 July 2022, denying coverage, in part, due to the sexual misconduct and abuse exclusions to the policy.

In her second affidavit for the amended motion to dismiss, Defendant's General Counsel swore,

> 3. On or around September 22, 2022, I received a letter via e-mail from Jennifer Hughes, claims adjuster for A.G. Risk Management which administers certain sexual abuse and sexual assault claims on behalf of Sparta Insurance Company as successor-in-interest for certain limited purposes to American Employers' Insurance Company.
>
> . . . .
>
> 5. The Letter addressed an insurance policy, with the number: AXR041445 (July 1, 1991—July 1, 1992) and analyzed its applicability to the lawsuit: *John Doe v. Robert Fulton and Winston-Salem/Forsyth County Board of Education* (21-CVS- 6295) currently pending in Superior Court, Forsyth County, North Carolina (the "Lawsuit").
>
> 6. The Letter denied insurance coverage to the Board for the Lawsuit on grounds that the relevant insurance policy contained an "ABUSE OR MOLESTATION EXCLUSION," among other reasons detailed in the Letter.
>
> 7. On or around April 1, 2, and 3, 2025, I conducted a review to determine if any other communications related to insurance coverage have been received by the Board since my first affidavit in August 2022. I found no further

- 19 -

> communication related to insurance coverage for the Lawsuit.
>
> 8. As I have previously testified and testify today, I have sought insurance coverage for the Lawsuit on behalf of the Board without success. The Board is currently paying the entire cost of defense for the Lawsuit due to the lack of insurance coverage.

The policy covering 1 July 1991 to 1 July 1992 was attached to the affidavit containing the aforementioned "abuse or molestation exclusion" to Defendant's liability coverage during that time period. Pertinent to this analysis, Plaintiff alleges Fulton sexually assaulted him on dates unspecified in 1992 and 1993. He also alleges Defendant "is not entitled to governmental immunity for the conduct alleged" and "upon information and belief, at all times relevant hereto, Defendant . . . waived any immunity through its purchase and maintenance of liability insurance coverage applicable to the acts and/or failures to act alleged herein."

With these in mind, we again "consider '(1) any allegations in the complaint that are not controverted by the defendant's affidavit and (2) all facts in the affidavit (which are uncontroverted because of the plaintiff's failure to offer evidence).'" *Providence*, 253 N.C. App. at 134–35, 800 S.E.2d at 432 (quoting *Banc of Am.*, 169 N.C. App. at 693-94, 611 S.E.2d at 182–83). Plaintiff's allegation he was sexually assaulted in 1992 is potentially controverted by Defendant's affidavits because Defendant provides in the second affidavit facts of the lack of insurance liability coverage for "abuse or molestation" from 1 July 1991 through 1 July 1992. However,

Plaintiff's allegations do not indicate when in 1992 the alleged sexual abuse and assault took place; moreover, nothing in Defendant's affidavits provide facts of the existence, or non-existence, of liability insurance covering the alleged acts in 1993, during which Plaintiff also alleges he was sexually assaulted. Because "[a] local board of education may incur liability . . . only with respect to a claim arising after such board of education has procured liability insurance . . . and during the time when such insurance is in force," N.C. Gen. Stat. § 115C-42, Defendant would need to show it had an insurance policy with a similar exclusion *during* the alleged acts or provide it did not have any insurance policy in place *during* the alleged acts. Thus, regardless of whether the 1992 allegations are controverted, Defendant has not yet controverted the 1993 allegations thus far.

Further, Defendant's affidavits do not present facts to indicate Defendant's search for insurance covering the alleged acts controvert Plaintiff's allegations. In the first affidavit, Defendant's General Counsel swore she had "commenced a diligent search and inquiry of [Defendant's] records to find a copy of any insurance policies that may have been in place at any time in or around the time periods described in the Complaint" and "ha[d] not located any such records yet." Defendant's General Counsel also swore at that time she was "unaware of any applicable insurance coverage for [Defendant] for the time periods described in the Complaint" and would "amend this Affidavit in the event any such policies are located." Additionally, in the second affidavit, Defendant's General Counsel swore she "conducted a review to

determine if any other communications related to insurance coverage have been received by [Defendant] since [her] first affidavit in August 2022 [and] found no further communication related to insurance coverage for the Lawsuit." Also, she swore, "I have sought insurance coverage for the Lawsuit on behalf of [Defendant] without success. [Defendant] is currently paying the entire cost of defense for the Lawsuit due to the lack of insurance coverage." None of these statements in the affidavits controvert Plaintiff's allegation "at all times relevant hereto, Defendant . . . waived any immunity through its purchase and maintenance of liability insurance coverage applicable to the acts and/or failures to act alleged herein" because they indicate an ongoing search for both any relevant insurance policies for the specific times of the alleged acts as well as any insurance policy that will cover Defendant's legal expenses but fail to controvert Plaintiff's allegation by swearing either the existence or lack of applicable insurance in force at the time of the alleged acts.

Notably, although Defendant argues there have been pockets of time where Plaintiff could have sought discovery, this case has not proceeded to discovery yet nor does the record indicate any discovery between parties has commenced. Thus, while Defendant's governmental immunity is not foreclosed, as of right now, Defendant has not controverted Plaintiff's allegations to merit granting its motion to dismiss under the current pendency of this case. Therefore, we hold the trial court did not err in denying the motion regarding governmental immunity.

**C. Statute of Repose**

Second, Defendant argues "[t]he trial court erred by permitting repose-barred claims to proceed" because "[a]ll claims in the Complaint were forever barred by the ten-year statute of repose contained in N.C.[ Gen. Stat.] §1-52(16) (2019)" and "[c]onstruing the Revival Window in a manner consistent with the Constitution, it can only operate to revive claims that were *not* previously barred by a statute of repose." (Emphasis in original). Specifically, Defendant argues, in part, this Court's lead opinion's footnote stating section 1-52(16) to not be applicable to claims of sexual abuse and assault of minor high school students in *McKinney v. Goins*, 290 N.C. App. 403, 892 S.E.2d 460 (2023), *aff'd as modified,* 387 N.C. 35, 911 S.E.2d 1 (2025), to be dicta, and the cases cited by this Court's lead opinion in *McKinney* to support the inapplicability of section 1-52(16) to be "inapposite because they did not consider the issue of whether an immediate injury would be barred by the statute of repose." We disagree.

"On appeal of a 12(b)(6) motion to dismiss, this Court conducts a de novo review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Puma Biotechnology, Inc. v. Hedrick Gardner Kincheloe & Garofalo, L.L.P.*, 300 N.C. App. 397, 400, 921 S.E.2d 562, 567 (2025) (italics omitted) (quoting *Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, 231 N.C. App. 70, 74, 752 S.E.2d 661, 663-64 (2013)). "A statute of limitations or repose defense may be raised by way of a motion to dismiss if it appears on the face of the complaint that such a statute bars the claim." *Id.* at 400–01, 921

S.E.2d at 567 (quoting *Hargett v. Holland*, 337 N.C. 651, 653, 447 S.E.2d 784, 786

(1994)). "However, '[a] 12(b)(6) dismissal based on the statute of repose would only

be appropriate if the complaint otherwise alleges facts *conclusively* showing that it

was not filed within the applicable statute of repose[ ]' as 'a plaintiff has no burden

at the pleading stage to allege facts showing that its complaint was filed within the

applicable statute of repose.'" *Id.* at 401, 921 S.E.2d at 567 (alterations in original)

(quoting *Gaston Cnty. Bd. of Educ. v. Shelco, LLC*, 285 N.C. App. 80, 84, 877 S.E.2d

316, 319–20 (2022)).

Section 1-52(16) says,

> (16) Unless otherwise provided by law, for personal injury
> or physical damage to claimant's property, the cause of
> action, except in causes of actions referred to in G.S. 1-
> 15(c), shall not accrue until bodily harm to the claimant or
> physical damage to his property becomes apparent or ought
> reasonably to have become apparent to the claimant,
> whichever event first occurs. *Except as provided in G.S.*
> *130A-26.3 or G.S. 1-17(d) and (e), no cause of action shall*
> *accrue more than 10 years from the last act or omission of*
> *the defendant giving rise to the cause of action.*

N.C. Gen. Stat. § 1-52(16) (2019) (emphasis added). As Defendant argues, Plaintiff's

suit was time-barred by this purported statute of repose "no later than 2003."

Further, as Defendant argues, since Plaintiff's claims are time-barred under the

purported statute of repose, Plaintiff is foreclosed from bringing the claims against

Defendant. While Defendant is correct about the operation of a statute of repose,

section 1-52(16)'s purported statute of repose does not apply to Plaintiff's claims.

In *McKinney*, the plaintiffs brought a suit in 2020 against the Gaston County Board of Education and their former high school football coach who had sexually abused and assaulted them while they were minors in high school in the 1990s and 2000s, relying on the SAFE Child Act's Revival Window. 290 N.C. App. at 408, 892 S.E.2d at 465. After a three-judge panel found the "statute of limitations defense is a constitutionally protected vested right" and "retroactive interference with a vested right is violative of the Law of the Land Clause's constitutional due process protections," the three-judge panel dismissed the suit. *Id.* at 408–09, 892 S.E.2d at 466. On appeal, this Court addressed the "central constitutional question raised by the parties, as appropriately considered by the three-judge panel, is whether a retroactive statute resuscitating a claim previously barred by a statute of limitations runs afoul of the North Carolina Constitution regardless of the circumstances." *Id.* at 411, 892 S.E.2d at 467.

This Court's lead opinion[5] reversed and remanded the panel, holding "the Board ha[d] failed to show beyond a reasonable doubt that an express provision of that supreme document prohibits revivals of statutes of limitation" and "under even the highest level of scrutiny, the SAFE Child Act's Revival Window passes constitutional muster." *Id.* at 432, 892 S.E.2d at 480. This Court's lead opinion also included a footnote recognizing "[t]he Board assert[ed] that [the p]laintiffs' claims

_____

[5] We follow our Supreme Court in referring to this opinion as the "lead opinion." *McKinney v. Goins*, 387 N.C. 35, 37 n.3, 911 S.E.2d 1, 5 n.3 (2025).

also violate the purported ten-year statute of repose found in [section] 1-52(16)," but the lead opinion explained "[t]his issue was not considered by the three-judge panel below, and their ruling does not address it." *Id.* at 427 n.15, 892 S.E.2d at 477 n.15. Still, the lead opinion stated, "because there is no contention that [the p]laintiffs suffered latent injuries—and given that the Board repeatedly asserts that the [p]laintiffs' claims accrued prior to their eighteenth birthdays—we hold that the purported statute of repose cited by the Board does not apply." *Id.* (first citing *Wilder v. Amatex Corp.*, 314 N.C. 550, 555, 336 S.E.2d 66, 69 (1985), then citing *Boudreau v. Baughman*, 322 N.C. 331, 334 n.2, 368 S.E.2d 849, 853 n.2 (1988), and then citing *Soderlund v. Kuch*, 143 N.C. App. 361, 370, 546 S.E.2d 632, 638 (2001)).

Our Supreme Court affirmed the lead opinion except for the lead opinion's substantive due process analysis, which it deemed "unnecessary" because when this Court's lead opinion "correctly concluded that text, context, and precedent did not support [the] defendant's interpretation of the vested rights doctrine[,] . . . it rejected [the] defendant's entire constitutional challenge." *McKinney*, 387 N.C. at 58–59, 911 S.E.2d at 18. Our Supreme Court stated, "[t]his case asks whether our state constitution limits the legislature's authority to revive previously expired tort claims by retroactively altering the applicable statute of limitations." *Id.* at 37, 911 S.E.2d at 4. Accordingly, our Supreme Court made no mention of this Court's lead opinion's footnote stating section 1-52(16) did not apply to the plaintiffs' claims, and only

mentioned statutes of repose in a footnote distinguishing a statute of repose from a statute of limitations. *Id.* at 48 n.7, 911 S.E.2d at 11 n.7.

On the surface, it would appear that both questions presented to this Court and our Supreme Court in *McKinney* focus solely on the statute of limitations, not the applicability of a purported statute of repose, making this Court's lead opinion's footnote on section 1-52(16)'s applicability dicta, as Defendant argues. *See Trs. of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.*, 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985) ("Language in an opinion not necessary to the decision is *obiter dictum* and later decisions are not bound thereby."). However, on closer inspection, the lead opinion's footnote is not dicta because if section 1-52(16)'s purported statute of repose was applicable to the plaintiffs' claims in *McKinney*, the claims—similar to Defendant's argument here—would have been time-barred forever, foreclosing the plaintiff's claims and appeal.[6] *McKinney*, 387 N.C. at 48 n.7, 911 S.E.2d at 11 n.7 ("The running of the statute of repose forever bars the underlying claim."). Thus, the lead opinion's limiting the application of 1-52(16)'s purported statute of repose to latent injuries was necessary to this Court's decision in *McKinney*; further, because this footnote was not a part of the substantive due process discussion, the lead

---

[6] This is presumably why this Court's lead opinion stated, "we *hold* that the purported statute of repose cited by the Board does not apply." *McKinney*, 290 N.C. App. at 427 n.15, 892 S.E.2d at 477 n.15 (emphasis added); *see Holding*, Black's Law Dictionary (12th ed. 2024) (defining holding as "[a] court's determination of a matter of law pivotal to its decision; a principle drawn from such a decision").

opinion's holding section 1-52(16) to not be applicable outside latent injuries was affirmed by our Supreme Court,[7] *McKinney*, 387 N.C. at 58–59, 911 S.E.2d at 18.[8]

Here, neither party argues or alleges the injuries contained in the complaint are latent injuries. Thus, Plaintiff's claims were subject to the three-year statute of limitations in N.C. Gen. Stat. § 1-52, subject to N.C. Gen. Stat. § 1-17, which had expired prior to the passage of the SAFE Child Act; thus, Plaintiff's claims were revived by the SAFE Child Act and filed within the statutory timeline. *See* SAFE Child Act § 4.2(b), 2019 N.C. Sess. Laws at 1235; *Cohane v. Home Missioners of Am.*, 387 N.C. 1, 8, 911 S.E.2d 43, 48 (2025) (stating SAFE Child Act § 4.2(b) "keys its operation to a specific universe of claims: those covered by the three-year statute of limitations provision. That includes 'assault, battery, or false imprisonment,'. . . claims for 'any other injury to the person or rights of another, not arising on contract,'. . . and claims for 'personal injury.' It also includes actions for negligence." (citing N.C. Gen. Stat. § 1-52(5), (16), (19) (2017))); *see Soderlund*, 143 N.C. App. at 367, 546 S.E.2d at 636–37.

---

[7] We note the defendant in *McKinney* briefed our Supreme Court on section 1-52(16)'s purported statute of repose.

[8] Defendant cites *Doe v. Doe,* 973 F.2d 237 (4th Cir. 1992), as support for the application of section 1-52(16) outside latent injuries. We echo this Court's opinion in *Soderlund v. Kuch*, 143 N.C. App. 361, 546 S.E.2d 632 (2001): "We recognize that with the exception of the United States Supreme Court, federal appellate decisions are not binding upon either the appellate or trial courts of this State. Therefore, we find that the decision in *Doe* is not binding upon this Court." *Id.* at 370, 546 S.E.2d at 638 (citation modified).

Even assuming *arguendo* this Court's lead opinion in *McKinney* was dicta, we hold section 1-52(16)'s purported statute of repose is inapplicable to the claims in this case. In *Wilder*, our Supreme Court expressly said the "ten-year statute of repose which runs from 'the last act of [the] defendant giving rise to the claim for relief' . . . *applies only to latent injury claims*." 314 N.C. at 555, 336 S.E.2d at 69 (emphasis added);[9] *Pembee Mfg. Corp. v. Cape Fear Const. Co.*, 313 N.C. 488, 493, 329 S.E.2d 350, 354 (1985) (describing section 1-52(16) as modifying the "common law rule by protecting a potential plaintiff in the case of a latent injury"). Several years thereafter, our Supreme Court reiterated section 1-52(16)'s limited application to latent injuries in *Boudreau*, noting section 1-52(16) "was intended to apply to plaintiffs with latent injuries." 322 N.C. at 334 n.2, 368 S.E.2d at 853 n.2. Furthermore, this Court has also recognized "[t]he primary purpose of N.C. Gen. Stat. § 1-52(16) is that it is intended to apply to plaintiffs with latent injuries." *Soderlund*, 143 N.C. App. at 370, 546 S.E.2d at 638 (quoting *Robertson v. City of High Point,* 129 N.C. App. 88, 91, 497 S.E.2d 300, 302 (1998)). Because section 1-52(16)'s purported statute of repose solely applies to latent injuries, and neither party argues or alleges

---

[9] In *Wilder*, our Supreme Court also stated the "primary purpose" of "the statute of limitations contained in the first clause of G.S. 1-52(16)" was "to change the accrual date from which the period of limitations begins to run on *latent* injury claims." *Id.* (emphasis added).

Plaintiff's alleged injuries were latent, we hold the trial court did not err in refusing to apply section 1-52(16)'s purported statute of repose.[10]

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's denial of Defendant's motion to dismiss.

AFFIRMED IN PART; DISMISSED IN PART.

Judges HAMPSON and GORE concur.

---

[10] Having held section 1-52(16)'s purported statute of repose is not applicable here, we need not address Plaintiff's judicial estoppel argument or Defendant's due process argument.